## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE STATE OF IOWA; KIMBERLY REYNOLDS, in her official capacity as Governor of Iowa; BRENNA BIRD, in her official capacity as Attorney General of Iowa; IOWA DEPARTMENT OF PUBLIC SAFETY; STEPHAN K. BAYENS, in his official capacity as Commissioner of Iowa Department of Public Safety,<br><br>    *Defendants*. | Case No. 4:24-cv-162 |

**COMPLAINT**

1. The United States brings this action to preserve its exclusive authority under federal law to regulate the entry and removal of noncitizens. Iowa's Senate File 2340 (SF 2340), like Texas's recently enacted (and preliminarily enjoined) Senate Bill 4 (SB 4), creates a purported state immigration crime for unlawful reentry, requires state judges to order the removal of certain noncitizens from the country, and mandates that state officials carry out those removal orders. But Iowa cannot create its own immigration system. Its efforts, through SF 2340, intrude on the federal government's exclusive authority to regulate the entry and removal of noncitizens, frustrate the United States' immigration operations, and interfere with U.S. foreign relations. SF 2340 is invalid and must be enjoined.

2. "The Government of the United States has broad, undoubted power over the subject of immigration and the status of" noncitizens. *Arizona v. United States*, 567 U.S. 387, 394 (2012). Indeed, "the regulation of [noncitizens] is so intimately blended and intertwined with responsibilities of the national government that where it acts, and the [S]tate also acts on the same subject," the state law must give way. *Hines v. Davidowitz*, 312 U.S. 52, 66 (1941). Iowa's SF 2340 is preempted by federal law and thus violates the Supremacy Clause of the United States Constitution. SF 2340 also violates the dormant Foreign Commerce Clause, which limits the power of the States to regulate the international movement of persons. In this action, the United States seeks a declaration invalidating, and an order enjoining the enforcement of, SF 2340.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and the United States seeks remedies under 28 U.S.C. §§ 1651, 2201, and 2202.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants reside within this district and because a substantial part of the acts or omissions giving rise to this action occurred within this judicial district.

## PARTIES

5. Plaintiff, the United States, regulates immigration and conducts foreign relations under its constitutional and statutory authorities and through its Executive Branch agencies, including the Department of Homeland Security (DHS) and its component agencies—U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS)—the Department of Justice, and the Department of State.

6. Defendant State of Iowa is a State of the United States.

7. Defendant Kimberly Reynolds is the Governor of Iowa. She is sued in her official capacity.

8. Defendant Brenna Bird is the Attorney General of Iowa. She has the authority to prosecute any case under Iowa law and has general supervisory authority over all Iowa prosecutors. Iowa Code § 13.2(1)(b), (g). She is sued in her official capacity.

9. Defendant Iowa Department of Public Safety (DPS) is an agency of Iowa, responsible for enforcing laws protecting the public safety and providing for the prevention and detection of crimes. Iowa Code § 80.5.

10. Defendant Stephan K. Bayens is the Commissioner of DPS. Iowa Code § 80.2. He is chief executive officer of DPS. *Id*. He is sued in his official capacity.

## CONSTITUTIONAL AND STATUTORY AUTHORITIES

11. Under the Supremacy Clause, the Constitution and federal immigration laws, including the Immigration and Nationality Act (INA), are—like all federal laws—"the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Through the Supremacy Clause, state laws may be preempted in various ways.

12. Under the doctrine of field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 567 U.S. at 399. "The intent to

displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.*

13. State laws are also "preempted when they conflict with federal law." *Arizona*, 567 U.S. at 399. "This includes cases where compliance with both federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

14. The Constitution tasks the federal government with regulating immigration, foreign affairs, and foreign commerce. The Constitution affords the federal government the power to "establish an uniform Rule of Naturalization," U.S. Const., art. I § 8, cl. 4, to "regulate Commerce with foreign Nations," *id.* art. I § 8, cl. 3, and to exercise authority inherent in the United States' national sovereignty, *see United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 318 (1936).

15. Thus, as the Supreme Court recognized, the "Government of the United States has broad, undoubted power over the subject of immigration and the status of" noncitizens. *Arizona*, 567 U.S. at 394. Congress has exercised its authority over immigration to make laws comprehensively governing the entry, admission, presence, status, and removal of noncitizens by enacting the INA, 8 U.S.C. § 1101, *et seq.*, and other laws regulating immigration.

16. As relevant here, Congress established a comprehensive, integrated framework governing the entry of noncitizens into the United States.[1] It has identified who may enter,

---

[1] Following the Homeland Security Act of 2002, many references to the "Attorney General" are now deemed to refer to the Secretary of Homeland Security. *See* 6 U.S.C. § 557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

*see, e.g.*, 8 U.S.C. §§ 1181–82, 1188, and how they may enter, *see, e.g., id.* §§ 1223–25.[2] Congress also has imposed federal criminal penalties on noncitizens who reenter the United States unlawfully. 8 U.S.C. § 1326, titled "Reentry of removed [noncitizens]," states that, subject to certain exceptions, "any [noncitizen] who . . . has been denied admission . . . or removed or has departed the United States while an order of . . . removal is outstanding, and thereafter . . . enters, attempts to enter, or is at any time found in, the United States . . . shall be fined . . . or imprisoned not more than 2 years, or both."

17. With respect to removal, the Supreme Court has confirmed "that the removal process" must be "entrusted to the discretion of the Federal Government," in part because a "decision on removability . . . touch[es] on foreign relations and must be made with one voice." *Arizona*, 567 U.S. at 409. Federal law sets forth a comprehensive removal framework. It identifies the grounds for removal, the requirements for commencing and administering removal proceedings, and the protections afforded to noncitizens throughout the process. *See, e.g.*, 8 U.S.C. §§ 1182, 1225, 1227, 1229, 1229a, 1231(a)–(b).

18. For example, federal law states that during removal proceedings under 8 U.S.C. § 1229a, which are overseen by specialized immigration judges, *see id.* §§ 1101(b)(4), 1229a(a)(1), noncitizens must be given certain rights, including (i) the right to "be[] represented . . . by counsel of the [noncitizen's] choosing," and (ii) "a reasonable opportunity to examine the evidence against the [noncitizen], to present evidence on the [noncitizen's] own behalf, and to cross-examine witnesses presented by the Government." *Id.* § 1229a(b)(4); *see also id.* § 1229a(b)(1). Congress instructed that, "unless otherwise specified [in the INA]," § 1229a removal proceedings "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3). Congress has also provided for judicial

---

[2] This complaint uses the term "noncitizen" as equivalent to the statutory term "alien." *See Barton v. Barr*, 140 S. Ct. 1442, 1446 n.2 (2020) (quoting 8 U.S.C. § 1101(a)(3)).

4

review of final removal orders in a court of appeals and allowed for a stay of removal pending judicial review. 8 U.S.C. § 1252; *Nken v. Holder*, 556 U.S. 418 (2009).

19. Moreover, certain noncitizens may be subject to expedited removal proceedings described in 8 U.S.C. § 1225(b)(1), in which the noncitizens will be "removed from the United States without further hearing or review," unless they, for example, claim a fear of persecution or torture or express an intent to apply for asylum. *Id.* § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4). There are further procedures for USCIS to assess whether a noncitizen has a credible fear. *See* 8 U.S.C. § 1225(b)(1)(B)(v); 8 C.F.R. §§ 208.30, 1003.42.

20. A noncitizen may apply for relief or protection from removal. For example, with certain exceptions, *see* 8 U.S.C. § 1158(a)(2) & (b)(2), Congress has specified that a noncitizen "who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such [noncitizen's] status, may apply for asylum," *id.* § 1158(a)(1). In addition, certain noncitizens may be entitled to withholding of removal, with limited exceptions, *see id.* § 1231(b)(3)(B), if they establish the requisite likelihood that they would face persecution on account of a protected ground if removed to the proposed country of removal, *id.* § 1231(b)(3). And noncitizens may also be entitled to protection from removal consistent with U.S. obligations under Article 3 of the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment (Convention Against Torture), if it is more likely than not that they would be tortured when removed to the proposed country of removal. 8 C.F.R. § 1208.16(c), 18. If the noncitizen is an unaccompanied child,[3] Congress has provided additional protections, *see* 8 U.S.C. § 1232; 6 U.S.C. § 279, including that the child must be transferred to the Office of Refugee Resettlement (ORR) of the Department of Health and Human Services (HHS), which generally must place the child with a care provider in the least restrictive setting that is in the best interest of the child, 8 U.S.C. § 1232(c)(2)(A).

---

[3] This complaint uses the term "unaccompanied child" as equivalent to the statutory term "unaccompanied alien child." See 6 U.S.C. § 279(g)(2).

5

21. Federal law also provides recourse to noncitizens who are subject to removal proceedings. Certain noncitizens in removal proceedings may apply for relief or protection from removal, 8 U.S.C. § 1229a(c)(4), and if ordered removed, may file a motion for reconsideration, *id.* § 1229a(c)(6), or reopening, *id.* § 1229a(c)(7), of the removal decision. In lieu of being subject to removal proceedings or removal, certain noncitizens may be permitted to depart the United States at their own expense, at the discretion of federal immigration officials. *See id.* § 1229c. Further, federal law establishes a comprehensive process for the execution of removal orders, including how the United States determines where a noncitizen may be removed to and the physical process of removal. *See id.* §§ 1231(b)–(c), 1253. Notably, federal law explicitly gives federal officials the responsibility to work with foreign governments to determine whether they will accept noncitizens who are subject to final removal orders. *See id.* §§ 1231(b)(1)–(2), 1253(d); 8 C.F.R. § 241.15; *see also* 8 U.S.C. § 1158(a)(2)(A) (noting bilateral agreements with foreign nations).

22. Congress has also established an enforcement apparatus to address unlawful entry into the United States. For example, CBP, "in coordination with" ICE and USCIS, is tasked with "enforc[ing] and administer[ing] all immigration laws," including "the inspection, processing, and admission of persons who seek to enter . . . the United States" and "the detection, interdiction, removal, departure from the United States . . . of persons unlawfully entering, or who have recently unlawfully entered, the United States." 6 U.S.C. § 211(c)(8). And U.S. Border Patrol has "primary responsibility for interdicting persons attempting to illegally enter . . . the United States . . . at a place other than a designated port of entry." *Id.* § 211(e)(3).

23. Federal law also gives DHS "the power and duty to control and guard" the border against illegal entry and to "perform such other acts as . . . necessary for carrying out [such] authority." 8 U.S.C. § 1103(a)(3), (5). In doing so, immigration officers enforce prohibitions on unlawful entry. *See id.* § 1357(a) (detailing the authority of federal immigration officers to "interrogate" and "arrest" noncitizens "entering or attempting to enter

the United States"); *see, e.g., id.* § 1357(a)(3) (authorizing access to certain private lands "for the purpose of patrolling the border to prevent the illegal entry of [noncitizens] into the United States"); H.R. Rep. No. 82-1377, at 3 (1957), 1952 U.S.C.C.A.N. 1358, 1360 (explaining that § 1357(a)(3) was designed to prevent illegal entries, protect "the national security," and preserve "the sovereign right of the United States to protect its own boundaries against the entry of [noncitizens]").

### SENATE FILE 2340

24. On April 10, 2024, the Governor of Iowa signed SF 2340 into law, adding a Chapter 718C to Iowa's Code of Criminal Law and Procedure. SF 2340 will become effective on July 1, 2024. This new law purports to create a new state crime and impose state penalties on noncitizens in Iowa who have unlawfully reentered the United States. It also would require Iowa state courts to order the removal of certain noncitizens from the United States.

25. SF 2340 contains two principal provisions. First, SF 2340 tracks 8 U.S.C. § 1326(a), which generally bars noncitizens from "enter[ing], attempt[ing] to enter, or" being "found in, the United States" if they previously have been "denied admission excluded, deported, or removed" or "ha[ve] departed the United Stats while an order of . . . removal is outstanding." SF 2340, like § 1326(a), makes it a crime for a noncitizen to "enter[], attempt[] to enter," or be found in Iowa after the person "has been denied admission to" or "has been excluded, deported, or removed from the United States, or "has departed from the" United States "while an order of exclusion, deportation or removal is outstanding." SF 2340, § 2 (codified at Iowa Code § 718C.2). This provision contains no exceptions or affirmative defenses. An order of "removal" includes "an order issued under" the newly created Chapter 718C "or any other agreement in which [a noncitizen] stipulates to removal pursuant to a criminal proceeding under either federal or state law." SF 2340, § 2(3) (codified at Iowa Code § 718C.2(3)).

26. This new state crime is generally an aggravated misdemeanor, with a default penalty of "imprisonment not to exceed two years" and "a fine" between $855 and $8,540.

*See* SF 2340, § 2(2) (codified at Iowa Code § 718C.2(2)); Iowa Code § 903.1(2).  Under certain circumstances, a violation of SF 2340 § 2 is a class D felony (punishable by imprisonment for up to five years and/or a fine between $1,025 and $10,245) or a class C felony (punishable by imprisonment for up to ten years and/or a fine between $1,375 and $13,660).  *See* SF 2340, § 2(2) (codified at Iowa Code § 718C.2(2)); *see* Iowa Code § 902.9(1)(d)-(e).  A violation of SF 2340 § 2 is a class D felony if, for example, "[t]he person's" prior "removal was subsequent to a conviction for commission of two or more misdemeanors involving drugs, crimes against a person, or both."  SF 2340, § 2(2)(a) (codified at Iowa Code § 718C.2(2)(a)).  A violation of SF 2340 § 2 is a class C felony if "the person was [previously] removed subsequent to a conviction for the commission of a felony." SF 2340, § 2(2)(b) (codified at Iowa Code § 718C.2(2)(b)).

27.  Iowa courts cannot "abate the prosecution of an offense" under SF 2340 "on the basis that a federal determination regarding the immigration status of the person [being prosecuted] is pending or will be initiated."  SF 2340, § 6 (codified at Iowa Code § 718C.6).

28.  Second, SF 2340 allows, and in some circumstances requires, state judges to order the removal of noncitizens from the country.  SF 2340, § 4 (codified at Iowa Code § 718C.4).  When a person is arrested for and/or charged with allegedly violating SF 2340 (but has not yet been convicted of violating SF 2340), a judge may "discharge the person and require the person to return to the foreign nation from which the person entered or attempted to enter" if, among other things, "the person agrees to the order" and has not "previously been" charged with or convicted of certain specified crimes.  SF 2340, § 4(1)-(3) (codified at Iowa Code § 718C.4(1)-(3)).  Additionally, if a person is *convicted* under SF 2340, removal is mandatory.  SF 2340, § 4(4)) (codified at Iowa Code § 718C.4(4)).  In that scenario, the state judge "*shall* enter . . . an order requiring the person to return to the foreign nation from which the person entered or attempted to enter," with that order "tak[ing] effect on completion of the term of confinement or imprisonment imposed by the judgment."  *Id.* (emphasis added).

8

29.     A removal order under SF 2340 must include, among other things, "the manner of transportation of the person to a port of entry," and the "law enforcement officer or state agency responsible for monitoring compliance with the order." SF 2340, § 4 (codified at Iowa Code § 718C.4).  A noncitizen's failure to comply with a removal order is itself a class C felony.  SF 2340, § 5 (codified at Iowa Code § 718C.5).

### SF 2340'S EFFECTS ON IMMIGRATION OPERATIONS, FEDERAL LAW ENFORCEMENT, AND FOREIGN RELATIONS

30.     If SF 2340 takes effect, it will interfere with federal immigration operations, including the carefully calibrated law-enforcement scheme governing entry and the comprehensive removal scheme, which also includes relief or protection from removal in circumstances identified by Congress.  It will interfere with the exclusive authority of the federal government to control entry into the United States and removal of noncitizens to foreign countries as well as the conduct of foreign relations.

31.     As the Supreme Court has recognized, the United States must speak with one voice in immigration matters.  "The authority to control immigration—to admit or exclude [noncitizens]—is vested solely in the Federal government." *Truax v. Raich*, 239 U.S. 33, 42 (1915).  "If it be otherwise, a single State [could], at her pleasure, embroil us in disastrous quarrels with other nations." *Chy v. Freeman*, 92 U.S. 275, 280 (1875).  Thus, a "principal feature" of federal immigration laws "is the broad discretion exercised by immigration officials." *Arizona*, 567 U.S. at 396.

32.     SF 2340 would interfere with the comprehensive statutory scheme Congress enacted.  Indeed, in some cases SF 2340 would prevent the Executive Branch from executing that statutory scheme at all.

33.     Even if SF 2340 "has the same aim as federal law and adopts its substantive standards," "[w]ere [SF 2340] to come into force, the State would have the power to bring criminal charges against individuals for violating a federal law even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would

9

frustrate federal policies." *Arizona*, 567 U.S. at 402. Moreover, SF 2340 imposes a unique scheme of state penalties for violations. *See id.* at 402–03 (noting "an inconsistency between [state law] and federal law with respect to penalties").

34. SF 2340 would also impede the federal government's ability to take appropriate enforcement actions and assess a noncitizen's national-security and public-safety risks.

35. SF 2340 would further interfere with federal immigration proceedings. The state law forbids abatement of an SF 2340 prosecution when the noncitizen has a pending determination of immigration status before the federal government, including an application for asylum or adjustment of status. SF 2340, § 6 (codified at Iowa Code § 718C.6); *see* 8 U.S.C. § 1158(a)(1) (a noncitizen "who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival . . . ), irrespective of such [noncitizen's] status, may apply for asylum"); *id.* § 1255 (providing that certain noncitizens are eligible to apply for adjust their status to that of a lawful permanent resident); 8 C.F.R. §§ 208.8, 1208.8 (a noncitizen's departure from the United States during the application process may be treated as an abandonment of their asylum application). A noncitizen facing SF 2340 enforcement proceedings while a federal determination of their immigration status is pending—including but not limited to removal proceedings—may be impeded from participating in the federal proceedings.

36. SF 2340 would interfere with the federal government's ability to conduct foreign relations by imposing criminal penalties and immigration consequences on foreign nationals based on their entry into the United States. "The dynamic nature of relations with other countries requires the Executive Branch to ensure that enforcement policies are consistent with this Nation's foreign policy." *Arizona*, 567 U.S. at 397.

37. The foreign-relations concerns are exacerbated because the purpose and effect of SF 2340 would be to remove noncitizens to countries without those countries' prior consent. SF 2340 permits state judges to, for example, order the removal of noncitizens to "the foreign nation[(s)] from which [they] entered or attempted to enter"—including Mexico,

Canada, and other countries—regardless of those noncitizens' countries of citizenship, and without any indication that the receiving countries are willing to accept them, potentially subjecting noncitizens to further criminal penalties if the foreign countries deny entry. Iowa's unilateral removal orders therefore may impair the United States' relations with Mexico and other countries. The Government of Mexico, for example, has already denounced expressed concern about SF 2340 and its effects on Mexican nationals. *See* Press Release, Secretaría de Relaciones Exteriores (April 10, 2024), https://perma.cc/36R4-JXHE. SF 2340 thus "impose[s] a significant burden upon the Executive's ability to conduct diplomatic relations with Mexico" and other countries. *Biden v. Texas*, 597 U.S. 785, 806 (2022).

38. SF 2340 also does not accommodate the United States' treaty obligations, as implemented in federal law (many of which govern the treatment of foreign nationals), or statutory limitations on removal. For example, the United States is a party to the Convention Against Torture, which has been implemented through federal law to prohibit the return of noncitizens to a country where there are substantial grounds for believing that they would be in danger of being subjected to torture. 8 C.F.R. §§ 1208.16–.18; *see* 8 U.S.C. § 1231 note 2 (United States Policy with Respect to the Involuntary Return of Person in Danger of Torture). Similarly, under the international obligations of the 1967 Protocol Relating to the Status of Refugees, which Congress implemented in the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, noncitizens may be entitled to withholding of removal if their life or freedom would be threatened in the country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3). SF 2340 does not provide a process or otherwise account for an individual who fears persecution (8 U.S.C. § 1231(b)(3)) or torture (implemented at 8 C.F.R. §§ 1208.16-.18) in the country of removal. Consequently, SF 2340 could improperly result in refoulement of noncitizens—that is, the return of noncitizens to a country where they would face torture or persecution.

39. Moreover, the implementation of SF 2340 would undermine U.S. efforts to convince governments worldwide to implement or strengthen their international protection

systems and uphold their respective nonrefoulement obligations. The international community would view SF 2340—an attempt by an individual State to operate a parallel immigration system through which it may order the removal of noncitizens—as a sign that the United States is scaling back its commitment to international protection. SF 2340 could thus encourage other governments to abandon or minimize their own international protection efforts—all without a deliberate policy choice by the federal government.

40. By empowering state officials to arrest and prosecute noncitizens who those officials suspect have reentered the country illegally, SF 2340 also risks the "unnecessary harassment" of certain noncitizens. *Arizona*, 567 U.S. at 408. This too can impair the federal government's ability to conduct foreign relations. *See id.* at 395 ("It is fundamental that foreign countries concerned about the status, safety, and security of their nationals in the United States must be able to confer and communicate on this subject with one national sovereign, not the 50 separate States.").

41. The federal government sent a letter to Iowa on May 2, 2024, explaining that SF 2340 violates the Supremacy Clause and the Foreign Commerce Clause of the United States Constitution, and that "the United States intends to file suit to enjoin the enforcement of SF 2340 unless Iowa agrees to refrain from enforcing the law." Ex. 1. Iowa did not respond to the letter.

## COUNT I — PREEMPTION

42. Plaintiff realleges paragraphs 1 – 41.

43. Under the Supremacy Clause, federal law is "the supreme law of the Land," preempting any contrary state laws. *See* U.S. Const. art. VI, Cl 2. "States are precluded from regulating conduct in a field that" Congress commits to the federal government's "exclusive governance." *Arizona*, 567 U.S. at 399. And a state law is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.*

44. SF 2340 unconstitutionally intrudes on the federal government's exclusive authority to regulate the entry and removal of noncitizens and therefore is field preempted.

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona*, 567 U.S. at 394; *see id.* at 395 ("Federal governance of immigration and alien status is extensive and complex"). Federal law delineates when it is unlawful for noncitizens to enter or reenter the United States and imposes penalties for violating those proscriptions. Federal law also establishes a comprehensive apparatus for the federal government to enforce those rules. *See generally* 6 U.S.C. §§ 202, 211, 252, 271; 8 U.S.C. §§ 1103(a), 1225, 1229a, 1325, 1326.

45. Federal law further sets forth a comprehensive framework governing the removal of noncitizens to foreign countries, a function that directly affects foreign relations. Federal law identifies the grounds for removal, the requirements for commencing and administering removal proceedings, the protections afforded to noncitizens throughout the process, and the process for selecting the country to which noncitizens may be removed. *See, e.g.*, 8 U.S.C. §§ 1182(a), 1225, 1227, 1229, 1229a, 1231(a)–(b). And the Supreme Court has confirmed "that the removal process" must be "entrusted to the discretion of the Federal Government," in part because a "decision on removability . . . touch[es] on foreign relations and must be made with one voice." *Arizona*, 567 U.S. at 409. Because the federal government has fully occupied the field of entry and removal, even "complementary state regulation" like SF 2340 is preempted. *Id.* at 401.

46. The federal interest is dominant in these areas: "[t]he power to regulate immigration—an attribute of sovereignty essential to the preservation of any nation—has been entrusted by the Constitution to the political branches of the Federal Government." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 864 (1982). That power stems from both Congress's authority to regulate immigration, *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977), and the President's "executive power to control the foreign affairs of the nation," *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). Indeed, only the federal government is charged with the conduct of foreign affairs. *See, e.g., Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003) ("There is, of course, no question that at some point an exercise of state power

13

that touches on foreign relations must yield to the National Government's policy, given the concern for uniformity in this country's dealings with foreign nations that animated the Constitution's allocation of the foreign relations power to the National Government in the first place."). SF 2340's provisions criminalizing reentry and providing for removal of noncitizens to foreign countries thus are field preempted.

47. SF 2340's provisions also "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399. Congress granted the federal government the responsibility under federal law to regulate the entry and removal of noncitizens and granted federal officers broad discretion in how those provisions are enforced. By purporting to empower state officials to police unlawful reentry and to remove noncitizens, SF 2340 interferes with the federal government's statutory authority to enforce the re-entry and removal provisions of federal law, and it conflicts with various provisions of federal law permitting noncitizens to seek relief or protection from removal. Under SF 2340, a noncitizen who is eligible for relief or protection from removal under federal law could be subject to removal under Iowa law. Consequently, SF 2340 could result in the refoulement of such noncitizens. In this way, Iowa is attempting to undertake its own removals without adhering to the removal scheme Congress devised.

48. Beyond that, federal officials must often work with foreign governments to determine whether they will accept noncitizens who are subject to final removal orders, the timing of such removals, and the logistics of such removals. *See* 8 U.S.C. §§ 1231(b), 1253(d). But States have no authority to do so. As a result, allowing Iowa to conduct its own removal process would frustrate the United States' ability to handle noncitizen removals "with one voice." *Arizona*, 567 U.S. at 409.

49. SF 2340's criminal provisions also are preempted by various other federal statutory provisions, which together form a framework for state assistance with the federal government's immigration enforcement in certain respects. Congress has mandated that state officials may assist in the enforcement of immigration law only with adequate training and

14

supervision by the federal government, 8 U.S.C. § 1357(g), and in specified circumstances, *see, e.g.*, *id.* § 1103(a)(10) (allowing the federal government to designate state officers for certain immigration enforcement in the face of an "imminent mass influx of" noncitizens); *id.* § 1252c (state officers "are authorized to arrest and detain an individual who . . . is [a noncitizen] illegally present in the United States," but only if, among other things, the individual "has previously been convicted of a felony" and is detained "only for such period of time as may be required for" federal immigration authorities "to take the individual into Federal custody"); *id.* § 1324(c) (allowing state officers to arrest individuals for certain crimes of human smuggling). None of these statutory provisions, however, permits a State to impose criminal penalties for illegal reentry of noncitizens or to remove noncitizens.

50. Other statutory provisions highlight the conflict between SF 2340 and federal law. For example, while both federal law and SF 2340 criminalize the reentry of excluded, removed, or deported noncitizens, federal law includes exceptions, like consent from the Secretary of Homeland Security. *See* 8 U.S.C. § 1326(a)(2). SF 2340's reentry provision has no affirmative defenses or exceptions, prohibiting noncitizens' reentry even if they have the Secretary of Homeland Security's permission, thus conflicting with the federal scheme. That is, noncitizens who were paroled into the United States under certain DHS parole processes or who otherwise legally reentered the United States after removal may be prosecuted under SF 2340 because the law extends to any noncitizen "found in th[e] state." SF 2340, § 2(1) (codified at Iowa Code § 718C.2(1)).

51. For example, a previously excluded or removed noncitizen could fly into Iowa's port of entry with the Secretary's consent or after establishing that such consent is unnecessary, *see* 8 U.S.C. § 1326(a)(2), but the noncitizen nonetheless would violate SF 2340 because she would be "found in [Iowa]," SF 2340 § 2(1) (codified at Iowa Code § 718C.2(1)). And to the extent Iowa seeks to arrest, detain, and prosecute unaccompanied noncitizen children, that would conflict with the protections Congress afforded such noncitizens,

including transfer to HHS's ORR and placement in the least restrictive setting that is in the best interest of the child. *See* 8 U.S.C. § 1232.

## COUNT II — FOREIGN COMMERCE CLAUSE

52. Plaintiff realleges paragraphs 1-51.

53. The Commerce Clause allows Congress to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. "One of the major defects of the Articles of Confederation, and a compelling reason for the calling of the Constitutional Convention of 1787, was the fact that the Articles essentially left the individual States free to burden commerce both among themselves and with foreign countries very much as they pleased." *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 283 (1976). Under the Constitution, "[f]oreign commerce is pre-eminently a matter of national concern." *Japan Line, Ltd. v. Los Angeles Cty.*, 441 U.S. 434, 448 (1979). And the Foreign Commerce Clause is one of the sources of Congress's power to regulate immigration through the INA and other statutes. The Foreign Commerce Clause thus strongly reinforces the preemptive force of the federal immigration scheme as discussed above.

54. Here, SF 2340 improperly regulates foreign commerce itself, which has long been understood to encompass the regulation of both persons and commodities. *See United States v. Guest*, 383 U.S. 745, 758–59 (1966). SF 2340 regulates *solely* the international movement of noncitizens into the United States (and ultimately into Iowa). "The Commerce Clause of the United States Constitution grants Congress the power to regulate" certain forms of commerce, but also, "[i]mplicit within the Commerce Clause is a negative or dormant feature that prevents individual states from regulating" those forms of commerce. *United Waste Sys. of Iowa, Inc. v. Wilson*, 189 F.3d 762, 765 (8th Cir. 1999).

55. SF 2340 "prevents this Nation from 'speaking with one voice' in regulating foreign" commerce," which "risk[s] . . . retaliation" and places "impediments before this Nation's conduct of its foreign relations." *Japan Line*, 441 U.S. at 452–53. For example, by

16

attempting to force noncitizens to return to countries from which they entered or attempted to enter the United States, regardless of those countries' willingness to accept the noncitizens or the noncitizens' nationality, SF 2340 "impose[s] a significant burden upon the Executive's ability to conduct diplomatic relations with [such foreign countries]." *Biden*, 597 U.S. at 806. Mexico, for example, has already asserted its right to "determine its own policies regarding entry into its territory" by "categorically reject[ing] any measure" that, like SF 2340, "allows state or local authorities to detain and return Mexican or foreign nationals to Mexican territory."  Press Release, Secretaría de Relaciones Exteriores (Nov. 15, 2023), https://perma.cc/RP7H-JXZR.

\* \* \*

56. Beyond the reentry and removal provisions—which, as explained in Counts I and II, are unlawful—the remaining, material SF 2340 provisions are ancillary to, and thus not severable from, those reentry and removal provisions.  Section 1 contains definitions for the other sections. SF 2340, § 1 (codified at Iowa Code § 718C.1).  Section 3 limits the law's operative provisions by prohibiting arrests in certain state haven locations.  SF 2340, § 3 (codified at Iowa Code § 718C.3).  Sections 7, 8, and 9 provide immunity and indemnification for officials who enforce the law's operative provisions and allow judgments in any civil proceedings brought against those officers to be appealed directly to the state supreme court. SF 2340, §§ 7–9 (codified at Iowa Code § 718C.7–.9).  Sections 10 and 11 limit a judge's discretion to defer or suspend a sentence imposed for violating the law's substantive provisions.  SF 2340, §§ 10–11 (codified at Iowa Code §§ 718C.10, 907.3).

## PRAYER FOR RELIEF

The United States respectfully requests that this Court:

a) Declare that SF 2340 violates the Supremacy Clause and Foreign Commerce Clause and is therefore invalid;

b) Preliminarily or permanently enjoin Defendants—as well as their successors, officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with those individuals—from enforcing SF 2340;

c) Award the United States its costs in this action; and

d) Grant any other relief this Court deems just and proper.

DATED: May 9, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JEAN LIN
Special Litigation Counsel, Federal Programs Branch

*/s/ Christopher A. Eiswerth*
CHRISTOPHER A. EISWERTH
STEPHEN EHRLICH
KUNTAL CHOLERA
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC  20005
Phone:  (202) 305-0568
Email:  christopher.a.eiswerth@usdoj.gov

*Attorneys for the United States*