**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff,* <br><br> v. <br><br> STATE OF IOWA, *et al.,* <br> *Defendants.* | Case No. 4:24-cv-00162-SHL-SBJ |

**DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION**

**FOR PRELIMINARY OR PERMANENT INJUNCTION**

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................i

TABLE OF AUTHORITIES.............................................................................................ii

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................1

LEGAL STANDARD ......................................................................................................4

ARGUMENT ...................................................................................................................5

    I.       Plaintiff Is Not Likely To Succeed On The Merits. .........................................5

        A.    SF2340 does not apply to lawful permanent residents. ...................................5

        B.    Plaintiff's claims are nonjusticiable. ...............................................................9

        C.    Federal immigration law does not preempt SF2340......................................11

        D.    The Foreign Commerce Clause does not bar criminalizing conduct entirely unrelated to foreign commerce. ......................................................................21

        E.    Iowa has a constitutional self-defense power when the federal government abdicates its own duties...............................................................................24

    II.      The Other Factors Weigh Against An Injunction.........................................24

CONCLUSION ...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ahmed v. Weyker,*
   984 F.3d 564 (8th Cir. 2020) .................................................................................9

*Arizona v. Arpaio,*
   76 F. Supp. 3d 833 (D. Ariz. 2015) ......................................................................13

*Arizona v. United States,*
   567 U.S. 387 (2012) ..........................1, 11, 12, 13, 15, 16, 17 18, 19, 20, 21

*Arkansas Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trustees,*
   37 F.4th 1386 (8th Cir. 2022) ...............................................................................25

*Armstrong v. Exceptional Child Ctr., Inc.,*
   575 U.S. 320 (2015) ...............................................................................................10

*California v. ARC Am. Corp.,*
   490 U.S. 93 (1989) .................................................................................................12

*California v. Zook,*
   336 U.S. 725 (1949) ...............................................................................................16

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
   520 U.S. 564 (1997) ...............................................................................................12

*Chamber of Comm. v. Whiting,*
   563 U.S. 582 (2011) ........................................................................................ 13, 18

*Chy Lung v. Freeman,*
   92 U.S. 275 (1876) ...........................................................................................12, 13

*Cordova-Soto v. Holder,*
   659 F.3d 1029 (10th Cir. 2011) ............................................................................14

*DeCanas v. Bica,*
   424 U.S. 351 (1976) ........................................................................................12, 13, 14

*Florida v. United States,*
   660 F. Supp. 3d 1239 (N.D. Fla. 2023) ..............................................................15

*Fox v. Ohio,*
   46 U.S. (5 How.) 410 (1847) .................................................................................25

*Furlow v. Belmar,*
   52 F.4th 393 (8th Cir. 2022) .......................................................................5, 20, 24

*Georgia Latino All. For Hum. Rts. v. Governor of Georgia,*
   691 F.3d 1250 (11th Cir. 2012) ...........................................................................20

*Gibbons v. Ogden,*
   22 U.S. (9 Wheat.) 1 (1824) .................................................................................22

*Gilbert v. Minnesota,*
   254 U.S. 325 (1920) ...............................................................................................16

*Gregory v. Ashcroft,*
   501 U.S. 452 (1991) ...............................................................................................11

*Gunn v. Minton,*
   568 U.S. 251 (2013) .................................................................................................9

*Huck v. Wyeth, Inc.,*
   850 N.W.2d 353 (Iowa 2014) ................................................................................7

## TABLE OF AUTHORITIES (cont'd)

*In re Debs,*
  158 U.S. 564 (1895) ........................................................................................10

*Japan Line, Ltd. v. Los Angeles County,*
  441 U.S. 434 (1979) .......................................................................................23

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) .........................................................................................7

*Jet Midwest Int'l Co., v. Jet Midwest Grp., LLC,*
  953 F.3d 1041 (8th Cir. 2020) ..........................................................................4

*Juidice v. Vail,*
  430 U.S. 327 (1977) .......................................................................................25

*Kansas v. Garcia,*
  589 U.S. 191 (2020) .........................................................11, 12, 13, 15, 16, 17

*Keller v. City of Fremont,*
  719 F.3d 931 (8th Cir. 2013) .....................................................................12, 20

*Kucera v. Baldazo,*
  745 N.W.2d 481 (Iowa 2008) .......................................................................8, 19

*Magellan Health Servs., Inc. v. Highmark Life Ins.,*
  755 N.W.2d 506 (Iowa 2008) .........................................................................10

*Maine v. Taylor,*
  477 U.S. 131 (1986) .......................................................................................23

*Mayor, Alderman and Commonalty of City of New York v. Miln,*
  36 U.S. (11 Pet.) 102 (1837) .......................................................13, 21, 22, 25

*Merrill Lynch, Pierce, Fenner & Smith v. Ware,*
  414 U.S. 117 (1973) ............................................................................4, 15, 21

*Miller v. Thurston,*
  967 F.3d 727 (8th Cir. 2020) ............................................................................4

*Nat'l Pork Producers Council v. Ross,*
  598 U.S. 356 (2023) .......................................................................................23

*New Motor Vehicle Bd. v. Orrin W. Fox Co.,*
  434 U.S. 1345 (1977) .....................................................................................25

*Oceanview Home for Adults, Inc. v. Zucker,*
  188 N.Y.S.3d 773 (N.Y. App. Div. 2023) .........................................................24

*Org. for Black Struggle v. Ashcroft,*
  978 F.3d 603 (8th Cir. 2020) ..........................................................................25

*Parker v. Brown,*
  317 U.S. 341 (1943) .................................................................................11, 15

*Pennsylvania v. Nelson,*
  350 U.S. 497 (1956) .......................................................................................15

*Pharm. Rsch. & Mfs. of Am. v. McClain,*
  95 F.4th 1136 (8th Cir. 2024) .........................................................................22

*Planned Parenthood Minn., N.D., S.D. v. Rounds,*
  530 F.3d 724 (8th Cir. 2008) ...........................................................4, 20, 24, 25

*Plyler v. Doe,*
  457 U.S. 202 (1982) .......................................................................................14

*Recognition Network, Inc. v. Hutchinson,*
  803 F.3d 952 (8th Cir. 2015) ..........................................................................11

*Rice v. Santa Fe Elevator Corp.,*
  331 U.S. 218 (1947) ...................................................................................7, 11

## TABLE OF AUTHORITIES (cont'd)

*Smith v. Turner,*
  48 U.S. (7 How.) 283 (1849) ...................................................................24
*State v. Abrahamson,*
  696 N.W.2d 589 (Iowa 2005) ............................................................. 7, 20
*State v. Rivera,*
  997 N.W.2d 890 (Iowa App. 2023)..........................................................2
*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ...................................................................... 10, 11
*Takahashi v. Fish & Game Comm'n,*
  334 U.S. 410 (1948) ...................................................................... 12, 13
*Texas v. Biden,*
  20 F.4th 928 (5th Cir. 2021) ....................................................................15
*Texas v. DHS,*
  2023 WL 8285223 (W.D. Tex. Nov. 29, 2023) ......................................2
*Truax v. Raich,*
  239 U.S. 33 (1915) ........................................................................ 12, 13
*U.S. Dep't of Veterans Affs. v. Boresi,*
  396 S.W.3d 356 (Mo. 2013)...................................................................24
*United States v. Alabama,*
  691 F.3d 1269 (11th Cir. 2012).............................................................20
*United States v. Salerno,*
  481 U.S. 739 (1987) ......................................................................... 5, 20
*United States v. South Carolina,*
  720 F.3d 518 (4th Cir. 2013) .................................................................13
*United States v. Texas,*
  97 F.4th 268 (5th Cir. 2024) ............................................................. 9, 10
*Va. Uranium, Inc. v. Warren,*
  587 U.S. 761 (2019)..............................................................................11
*Wash. State Grange v. Wash. State Rep. Party,*
  552 U.S. 442 (2008)..............................................................................21
*Watkins Inc. v. Lewis,*
  346 F.3d 841 (8th Cir. 2003)...................................................................4
*Weissenberger v. Iowa Dist. Court of Warren Cty.,*
  740 N.W.2d 431 (Iowa 2007) ............................................................ 9, 19
*West v. City of Tacoma,*
  456 P.3d 894 (Wash. App. 2020)............................................................24
*Whole Woman's Health v. Jackson,*
  595 U.S. 30 (2021)................................................................................10
*Wyeth v. Levine,*
  555 U.S. 555 (2009) ...................................................................... 12, 13

### Constitutional Provisions

U.S. Const. art. I, § 8 .................................................................. 1, 10, 22
U.S. Const. art. I, §10 ..........................................................................24
U.S. Const. art. VI................................................................... 10, 11

## TABLE OF AUTHORITIES (cont'd)

### Statutes

8 U.S.C. § 1101 ........................................................................................................ 6, 18

8 U.S.C. § 1182 ......................................................................................................... 3, 6

8 U.S.C. § 1229a ....................................................................................................... 3, 6

8 U.S.C. § 1229c ....................................................................................................... 3, 4

8 U.S.C. § 1231 ..................................................................................................... 6, 14

8 U.S.C. § 1324 ............................................................................................................ 18

8 U.S.C. § 1326 ............................................................................. 3, 4, 6, 14, 16, 17

8 U.S.C. § 1357 ...................................................................................................... 18, 19

8 U.S.C. § 1373 ...................................................................................................... 14, 18

18 U.S.C. § 758 ............................................................................................................ 18

18 U.S.C. § 3559 ............................................................................................................ 3

18 U.S.C. § 3571 ............................................................................................................ 3

22 U.S.C. § 7105 .......................................................................................................... 18

28 U.S.C. § 517 ............................................................................................................ 24

Iowa Code § 4.12 .............................................................................................. 4, 15, 21

Iowa Code 4.4 ................................................................................................................ 9

Iowa Code § 718C ................................................................... 3, 4, 5, 7, 8, 9, 14, 17, 19

### Regulations

8 C.F.R. § 245.23 ........................................................................................................... 6

19 C.F.R. § 101.3 ........................................................................................................... 8

### Other Authorities

1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994) ........................................ 8

Black's Law Dictionary (11th ed. 2019) ........................................................................ 8

Chuck Grassley, *As Biden Administration Rolls Back Immigration Enforcement, Ernst, Grassley, Colleagues Reintroduce 'Sarah's Law' Ahead of the Fifth Anniversary of Sarah Root's Death* (Jan. 28, 2021) *available at* perma.cc/Y26S-D7K5 .................................................................................................... 2

Conner Hendricks, *Human trafficking is on the rise*, KCRG, Jul. 28, 2023 ................. 3

Hannah Rodriguez, *Crime 'hidden in plain sight': Survivor advocates explain human trafficking can be anywhere and what makes I-80 a target*, WQAD, Mar. 5, 2020 ................................................................... 3

John Gramlich, *Migrant encounters at the U.S.-Mexico border hit a record high at the end of 2023*, Pew Research Center (Feb. 15, 2024) ......................................................................................................... 2

Joni Ernst, *Ernst Calls on Senate to Pass Sarah's Law* (Mar. 7, 2024), *available at* perma.cc/FV2P-6JHG ................................................................................................. 2

Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340 (May 8, 2024) *available at* perma.cc/ZFT2-XNFP .................................................................................................. 8

Marti Sivi, *Iowa View: State is at a crossroads for sex-trafficking*, Des Moines Register, Jan. 6, 2014 ........ 2, 3

Michael John Garcia & Kate M. Manuel, Cong. Research Serv., R41423, Authority of State and Local Police to Enforce Federal Immigration Law 5 (2012) .......................................................... 18, 19

*Oxford English Dictionary* (December 2023), doi.org/10.1093/OED/3243407940 ................. 5

Robert G. Natelson & Andrew T. Hyman, *The Constitution, Invasion, Immigration, and the War Powers of States*, 13 British J. Am. Leg. Studies 1 (2024) ......................................................... 24

**TABLE OF AUTHORITIES (cont'd)**

The White House, *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations* (Jan. 26, 2024) ..................................................................................................................1

Todd Bensman, *Overrun: How Joe Biden Unleashed The Greatest Border Crisis In U.S. History* (2023) ..........2

*Webster's Second New Int'l Dictionary* (1934).................................................................................................6

## INTRODUCTION

"Imagine a provision—perhaps inserted right after Art. I, § 8, cl. 4, the Naturalization Clause—which included among the enumerated powers of Congress 'To establish Limitations upon Immigration that will be exclusive and that will be enforced only to the extent the President deems appropriate.' The delegates to the Grand Convention would have rushed to the exits." *Arizona v. United States*, 567 U.S. 387, 436 (2012) (Scalia, J., concurring in part and dissenting in part). But Plaintiff asks for that exclusive federal power here.

Iowa's new law, SF2340, codifies a criminal analogue to the federal crime of illegal reentry. It does not create new standards governing alien admissibility or removability nor does it regulate alien registration. Every act punished is already a federal crime, so it maintains current foreign relations. And it does not ask Iowa officials to remove illegal aliens from the country—or even from Iowa. Arguments to the contrary ignore the law's plain text.

SF2340 does not offend federal law. The Supreme Court has expressly stated that States retained sovereign police power related to immigration. So long as States do not use that power to regulate admissibility or removal standards or alien registration, and so long as the state crime criminalizes conduct already criminalized federally, the Supreme Court has found no constitutional flaws.

Plaintiff meanwhile asks the Court to extend implied preemption to new limits and to enjoin SF2340 in full. But Plaintiff lacks a cause of action to bring this challenge. Particularly given this case—a pre-enforcement, facial challenge, where Plaintiff must establish it is likely that there is no constitutional application of the law—the Court should decline the invitation.

## BACKGROUND

According to President Biden, our Nation is in the throes of an unprecedented illegal immigration "crisis." The White House, *Statement from President Joe Biden on the Bipartisan Senate Border Security Negotiations* (Jan. 26, 2024). Rather than fix the crisis, he has taken a different tack. Illegal border crossings have hit record highs over the past four years, with up to 250,000 people apprehended at

the border each month. John Gramlich, *Migrant encounters at the U.S.-Mexico border hit a record high at the end of 2023*, Pew Research Center (Feb. 15, 2024). An enormous uptick "from a comparatively paltry 458,000 in 2020." *Texas v. DHS*, 2023 WL 8285223, at *3 (W.D. Tex. Nov. 29, 2023). The federal government is "derelict in enforcing" its "statutory duties." *Id.* at *14.

Organized criminal organizations have noticed. Human trafficking "has become an incredibly lucrative enterprise for the Mexican drug cartels," and "the infrastructure built by the cartels for human cargo can also be used to ship illegal substances, namely fentanyl." *Id.* at *3. Indeed, human trafficking may have surpassed drug trafficking's profitability. *See* Todd Bensman, *Overrun: How Joe Biden Unleashed The Greatest Border Crisis In U.S. History* 29–32, 193 (2023).

This illegal immigration crisis has led to Iowans' lives being "cut short by" illegal aliens "who disregard[] the rule of law." Chuck Grassley, *As Biden Administration Rolls Back Immigration Enforcement, Ernst, Grassley, Colleagues Reintroduce 'Sarah's Law' Ahead of the Fifth Anniversary of Sarah Root's Death* (Jan. 28, 2021) *available at* perma.cc/Y26S-D7K5. On the night of Sarah Root's college graduation, she was killed by an illegal alien in a drunk driving accident. *Id.* Just two years later, "Mollie Tibbetts went for an evening run . . . in her hometown of Brooklyn, Iowa, and seemingly vanished." *State v. Rivera*, 997 N.W.2d 890, *1 (Iowa App. 2023) (table). The reason she vanished: an illegal alien killed her before dumping her body in a cornfield. *Id.* at *3. Tibbetts had just finished her first year at the University of Iowa. *Id.* at *1. In response, Iowa's U.S. senators begged the federal government to do its job and "start enforcing the law" to protect Iowans. *See* Grassley, *supra*; Joni Ernst, *Ernst Calls on Senate to Pass Sarah's Law* (Mar. 7, 2024), *available at* perma.cc/FV2P-6JHG.

Iowa lies at the crossroads for human trafficking, with Interstates 35 and 80 intersecting creating "an easy way to arrive and disappear fast in four directions." Marti Sivi, *Iowa View: State is at a crossroads for sex-trafficking*, Des Moines Register, Jan. 6, 2014; Trafficking Education, *Wings of Refuge*, perma.cc/ZMD3-HKPW (accessed May 31, 2024); Hannah Rodriguez, *Crime 'hidden in plain sight':*

*Survivor advocates explain human trafficking can be anywhere and what makes I-80 a target*, WQAD, Mar. 5, 2020. And human trafficking is on the rise. Conner Hendricks, *Human trafficking is on the rise*, KCRG, Jul. 28, 2023. The illegal immigration crisis only adds fuel to this fire.

The Legislature recognized a need for a solution. Against the federal decision not to enforce immigration laws, leading to the exploding illegal immigration crisis, the Legislature authorized an Iowa criminal analogue to federal criminal illegal entry. *See* SF2340 (to be codified at Iowa Code ch. 718C). That law is set to take effect on July 1.

SF2340 depends on the federal government making an adverse immigration determination. The law makes it a crime to enter, attempt to enter, or be found in Iowa after having been "excluded, deported, or removed," or having departed the United States "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). The offense is punishable by up to two years in prison or a fine of between $855.00 and $8,540.00, or both. Iowa Code §§ 718C.2(2), 903.1(2). After conviction, a judge must issue an order to return, specifying how the illegal alien will be transported to a port of entry and which state official will monitor compliance. Iowa Code § 718C.4. Failure to comply with an order to return amounts to a felony. *Id.* § 718C.5.

That tracks federal law. Congress criminalized reentry by aliens who have been "denied admission," involuntarily "removed," or have departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). An alien who illegally reenters "shall" be imprisoned up to two years, fined up to $250,000, or both. *Id.*; 18 U.S.C. §§ 3559(a)(5), 3571(b)(3). Congress has directed immigration officers to "order removed from the United States without further hearing or review" an alien who lacks a "valid entry document." *Id.* §§ 1225(b)(1)(A)(i), 1182(a)(7). Failure to comply is a felony. *Id.* §§ 1253(a)(1), 1229a(c)(5); *see* 18 U.S.C. § 3559(a)(5).

Under both laws, illegal aliens may agree to voluntary departure, Iowa Code § 718C.4(1)–(3); 8 U.S.C. § 1229c, and may face harsher penalties under certain aggravating circumstances. Iowa Code

§ 718C.2(2); 8 U.S.C. § 1326(b).

Under SF2340, a court may not abate a prosecution based on "a federal determination regarding the immigration status of the person is pending or will be initiated." Iowa Code § 718C.6. But it allows abatement based on a final determination of an alien's lawful federal immigration status.

Plaintiff asserts a facial challenge to SF2340 on behalf of its enforcement agencies. Dkt. 1 ¶ 5. This challenge includes two counts. *First*, it claims SF2340 is preempted by federal laws that govern when an alien must leave the country. *Id.* ¶¶ 42–51. *Second*, it claims SF2340 violates the Dormant Foreign Commerce Clause's supposed prohibition of state laws on who can enter the country. *Id.* ¶¶ 52–56.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). When analyzing a preliminary injunction, district courts consider: "(1) the threat of irreparable harm to the movant; (2) the . . . balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Jet Midwest Int'l Co., v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044 (8th Cir. 2020). When seeking to enjoin a state statute, movant must meet a more rigorous threshold requirement: movants must show they are "likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008). A permanent injunction requires actual success on the merits. *Miller v. Thurston*, 967 F.3d 727, 735 (8th Cir. 2020).

Iowa statutes are presumed severable. Iowa Code § 4.12. And rather than enjoining enforcement of entire state scheme, courts "reconcile the operations of both [state and federal] statutory schemes with one another." *Merrill Lynch, Pierce, Fenner & Smith v. Ware*, 414 U.S. 117, 127 (1973) (collecting cases dating back over 100 years supporting this approach). State statutes should be preempted "only to the extent necessary to protect the achievement of the aims of the [federal law]." *Id.*

# ARGUMENT

## I.     Plaintiff Is Not Likely To Succeed On The Merits.

A plaintiff must show there is no "circumstance" in which a statute can be constitutionally applied to win on a facial challenge. *Furlow v. Belmar*, 52 F.4th 393, 400 (8th Cir. 2022); *see United States v. Salerno*, 481 U.S. 739, 745 (1987).

### A.     SF2340 does not apply to lawful permanent residents.

SF2340 does not apply to those lawfully admitted in the United States; it does not provide for Iowa officials to remove aliens from the country; and if a lawful resident is charged under SF2340, the alien's final lawful federal immigration status would mandate abatement of the prosecution.

*Section 2: Iowa Illegal Reentry.* Aliens commit the illegal reentry offense if they "enter[], attempt[] to enter, or [are] at any time found" in Iowa:

> under any of the following circumstances:
> a. The person has been denied admission to or has been excluded, deported, or removed from the United States.
> b. The person has departed from the United States while an order of exclusion, deportation, or removal is outstanding.

Iowa Code § 718C.2. That section explains which federal immigration statuses, prevailing at the time the alien enters, attempts to enter, or is found in Iowa, trigger SF2340's penalties. The controlling phrase "enters . . . under any of the following circumstances" reveals that the statuses—i.e., "denied admission," "excluded," "deported," "removed," or "departed" while order to leave is outstanding— must be the prevailing condition when the alien is found in Iowa.

Indeed, the most natural understanding of "under any of the following circumstances" is that the listed scenarios must be the prevailing condition. The definition of "circumstance" confirms this. Particularly when used in the phrase "under the circumstance," it means the "'condition or state of affairs' surrounding and affecting an agent; esp. the external conditions prevailing at the time." Circumstance, *Oxford English Dictionary* (December 2023), doi.org/10.1093/OED/3243407940; *see*

Circumstance, *Webster's Second New Int'l Dictionary* (1934) ("One of the conditions under which an event takes place or with respect to which a fact is determined; a condition, fact, or event."). The relevant inquiry then is what immigration "condition[] prevail[s] at the time."

The statute is not naturally read to cover an alien who was at one point removable without regard for an intervening event altering her status. An alien who was deported years ago and has since received permission to reenter with a visa, did not have a "deported" "condition" or "state of affairs" on reentry. Her *prevailing* condition at reentry was lawful visa-holder. Indeed, she would describe her prevailing immigration "condition" or "state of affairs" as lawful or visa-holder. She would not report her prevailing immigration condition as "deported."

SF2340 illegal reentry determinations are thus made based on federal immigration statuses like "excluded" or "deported." Under federal law, aliens who have received federal government consent to reenter the country have not reentered illegally, nor are they "excluded" or "deported." *See* 8 U.S.C. § 1326(a)(2). Contrary arguments, *see* No. 4:24-cv-00161, Dkt. 35 at 2 & n.1, depend on a reading of federal law that is contrary to how the federal government and Iowa applies laws.

Removal requires an alien's departure from the country and—particularly important here—bars reentry. *See* 8 U.S.C. §§ 1229a(c)(5), (e)(2), 1231, 1182(a)(9). Federal consent removes the reentry bar and allows readmission. *See, e.g., id.* §§ 1182(a)(9)(A)(iii), (C)(ii) (waiver of inadmissibility based on removal); § 1182(a)(9)(C)(iii) (Violence Against Women Act waiver); 8 C.F.R. § 245.23 (waiver for human trafficking victims); *see* MMJ Pls.' Br. at 3–4, 12. In other words, consent nullifies the reentry bar, regardless of whether it is characterized as waiving prior removal or as "allow[ing] for return notwithstanding the grounds for inadmissibility." No. 4:24-cv-00161, Dkt. 35 at 2 n.1.

Other sections reenforce that approach. Under immigration statutes, "admission" means the lawful entry of an alien into the United States." 8 U.S.C. § 1101(a)(13). That means the Attorney General's "consent[] to the alien's admission," *id.* § 1182(a)(9), is consent to reapply for "lawful entry."

Put another way, consent gives an alien the ability to seek permission to reenter lawfully—not subject to federal laws prohibiting *illegal* reentry or SF2340.

So where prior exclusion, deportation, or removal been waived, there is no prevailing reentry bar to trigger SF2340. A once-deported, now-legal permanent resident did not reenter under any of the prohibited prevailing conditions. *See* Iowa Code § 718C.2. Rather, she was deported then reentered under a waiver of prior inadmissibility and federal permission. The intervening event matters.

Not only is that the plain meaning, but any interpretation allowing Iowa to prosecute persons lawfully in the United States would regulate admission and removal standards—the sole province of the federal government. Yet Plaintiff argues for just such a reading. *See* Dkt. 7-1 at 17–18.

Even if Plaintiff's interpretation were plausible, it is not correct. Standard canons of construction instruct courts faced with multiple plausible readings to interpret a statute to avoid constitutional claims, *see Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018); *State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005), and to apply a presumption against preemption, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947); *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 363 (Iowa 2014) (Iowa courts favor narrow construction to avoid preemption); *Magellan Health Servs., Inc. v. Highmark Life Ins.*, 755 N.W.2d 506, 513 (Iowa 2008). So even if this Court considers Plaintiff's interpretation plausible, it should avoid the constitutional claim, presume no preemption, and apply the State's interpretation.

*Section 4: Order to Return.* An Order to Return under SF2340 must specify how the illegal alien will be transported to a port of entry and which state official will monitor compliance. Iowa Code § 718C.4. The order does not state that the illegal alien will be taken beyond the port of entry. Once the person arrives at the port of entry, removal is a question for federal immigration officers.

SF2340 does not provide for Iowa officials' removal of a convicted illegal alien from Iowa or the United States. It does not give state officials authority to enforce the Order to Return, and it requires only that the official report the order's issuance to the Department of Public Safety. Iowa Code

§§ 718C.4(5)–(7). The law also allows charges to be dismissed if the person agrees to leave the State voluntarily and does not authorize state officials to effect that removal. Iowa Code § 718C.4.

The confusion as to "how Iowa intends to accomplish removal," Dkt. 7-1 at 8 n.2, illustrates this logical error. Iowa does not intend to "accomplish" removal. There are no direct international flights from any Iowa port of entry. *See* 19 C.F.R. § 101.3 (designating Des Moines International Airport and Quad Cities International Airport as ports of entry).

SF2340's legislative analysis confirms that the law does not provide for State-facilitated removal. A May 2024 fiscal report examined the law's potential prison, probation, parole, and other correctional costs. *See* Legislative Servs. Agency, Fiscal Servs. Div., Fiscal Note: SF2340, at 2 (May 8, 2024) *available at* perma.cc/ZFT2-XNFP. It also considered "the cost to transport an individual to a port of entry." *Id.* It did not analyze the cost to transport an alien beyond the port of entry. *Id.* There was no need to analyze removal costs because the law removes no one—it at most authorizes authorities to hand illegal aliens over to federal immigration officers at one of Iowa's ports of entry.

*Section 6: Abatement*. Section 6 states: "A court may not abate the prosecution . . . on the basis that a federal determination regarding the immigration status of the person is pending or will be initiated." Iowa Code § 718C.6. It is limited to pending or not-yet initiated determinations. It does not apply to final determinations. *See Kucera v. Baldazo*, 745 N.W.2d 481, 487 (Iowa 2008) ("When interpreting laws, we are guided by the rule of 'expressio unius est exclusio alterious.'").

Abatement's meaning also gives wider effect to Section 6. "Abatement" means "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." *Abatement*, Black's Law Dictionary (11th ed. 2019). The term "abatement" is distinguishable from a "stay." 1 Am. Jur. 2d *Abatement, Survival, and Revival*, § 3 (1994). When "grounds for abatement of an action exist, the abatement of the action is a matter of right," whereas a stay is discretionary. *Id.* So "in proper circumstances a court may stay a proceeding pending the outcome of another proceeding"—such as

a pending federal immigration determination—and may do so even though "a strict plea in abatement could not be sustained." *See id.*

Put differently, Section 6 is inapplicable to aliens with final lawful status. If charges are filed, nothing prevents a legal alien from asserting her *final* federal immigration status, and such final federal determinations would require abatement. *See Weissenberger v. Iowa Dist. Court of Warren Cty.*, 740 N.W.2d 431, 436 (Iowa 2007) ("[L]aws of the United States are just as much binding" on State courts "as State laws are." (quotation omitted)); *see also* Iowa Code § 4.4(1) ("[I]t is presumed that [c]ompliance" with Iowa and federal Constitutions "is intended"); Iowa Code § 4.4(3).

In sum, Iowa law shows that a final federal determination of lawful status mandates abatement. But if an illegal alien charged under SF 2340 has or will have a pending asylum case, then circumstances may warrant a discretionary stay. Even if the alien does not get a stay, and is convicted or agrees to voluntary departure, the Order to Return identifies only how she would be brought to one of Iowa's ports of entry. *See* Iowa Code § 718C.4. No Iowa official could remove her. Once at the port of entry, Iowa officers' obligation ceases and federal officers would make the ultimate removal determination; that necessarily includes assessing relevant legal defenses.

## B.   Plaintiff's claims are nonjusticiable.

### 1.   *Plaintiff has no cause of action.*

"Federal courts are courts of limited jurisdiction possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). Plaintiff implies the Constitution authorizes its suit yet does not answer "the question [of] whether Congress has done so." *Id.* at 256–257. But "the separation of powers generally vests the power to create new causes of action in Congress, not [the courts]." *Ahmed v. Weyker,* 984 F.3d 564, 567 (8th Cir. 2020).

Plaintiff claims an equitable right to relief. But an equitable right must "come[] within some traditional head of equitable jurisdiction….[T]o invoke equitable jurisdiction, a plaintiff is required to

show that his grievance is the kind of grievance that equity has traditionally remedied." *United States v. Texas¸* 97 F.4th 268, 307 n.3 (5th Cir. 2024) (Oldham, J., dissenting) (quotation marks omitted). Any claim for equity must be "grounded in traditional equity practice." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).

Here, the United States fails to identify a statutory authority or traditional equity principle permitting its claims. Instead, it relies on the Supremacy Clause, U.S. Const. art. VI, cl. 2. But that Clause confers no federal rights; it is a rule of decision. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324 (2015). It "certainly does not create a cause of action." *Id.* at 325. "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* The Supremacy Clause thus does not "give affected parties a constitutional (and hence congressionally unalterable) right to enforce federal laws against the States." *Id.* Congress and the President enact causes of action via legislation. Plaintiff's claim implies that the Supremacy Clause creates that cause of action. But it does not.

Plaintiff also makes a Commerce Clause claim, U.S. Const. art. I, § 8. But that fails too. The Commerce Clause is a source of power for Congress and the Supremacy Clause is a rule of decision, neither confers rights without a cause of action.

In reply, perhaps the United States will raise *In re Debs*, where the Court upheld enjoining a strike because the United States had a property interest in the mail despite a lack of pecuniary interest. 158 U.S. 564, 583, 586 (1895). But *Debs* relied on an underlying finding that the United States's claim there was grounded in traditional equity or to abate a public nuisance. Commerce and "Supremacy Clause violations do not implicate the federal government's property interests, nor do they constitute public nuisances." *Texas¸* 97 F.4th at 309 (Oldham, J., dissenting).

Lastly, cases where this issue went unaddressed do not set precedent here. "[D]rive-by jurisdictional rulings . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

91 (1998). Lacking a cause of action—statutory, equitable, or otherwise—Plaintiff cannot sue.

> 2.   *Plaintiff lacks standing to challenge Section 4.*

A favorable decision will not redress Plaintiff's alleged harm from Section 4. Section 4 authorizes judges to issue return orders. But Plaintiff seeks to enjoin Defendants' Section 4 enforcement. So if this Court enjoins only Section 4, then non-party judges could still issue orders to return because the injunction runs against Defendants only. *See Digit. Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) ("A district court has no authority to enjoin the statute; an injunction would run only against the defendants in the case."). Plaintiff lacks standing to pursue its Section 4 challenge.

## C.   Federal immigration law does not preempt SF2340.

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). Under federalism, "the states are sovereign, save only as Congress may constitutionally subtract from their authority." *Parker v. Brown*, 317 U.S. 341, 351 (1943). And under the Supremacy Clause, "the Laws of the United States" take priority over conflicting state law. U.S. Const., art. VI, cl. 2.

Preemption is powerful and must be narrowly construed. *See Arizona*, 567 U.S. at 398–401. Courts scrutinize implied preemption claims because "an unexpressed purpose to nullify a State's control over its officers and agents is not lightly to be attributed to Congress." *Parker*, 317 U.S. at 351. Implied preemption "start[s] with the assumption that the historic police powers of the States were not to be superseded . . . unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230. "Invoking some brooding federal interest or appealing to a judicial policy preference should never be enough to win preemption of a state law." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). Indeed, federal enforcement priorities do not preempt state law: "The Supremacy Clause gives priority to 'the Laws of the United States,' not the criminal law enforcement priorities or preferences of federal

officers." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020).

Plaintiff raises two implied preemption arguments. Both fall short.

1.      *SF2340 does not regulate in any field occupied by federal law.*

Field preemption "is itself suspect, at least as applied in the absence of a congressional command that particular field be preempted." *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 616–617 (1997) (Thomas, J., dissenting). Plaintiff points to no such command here. Only "[i]n rare cases" have courts found that Congress has "'legislated so comprehensively' in a particular field that it 'left no room for supplementary legislation.'" *Kansas*, 589 U.S. at 208. The first step in field-preemption analysis is to define the "field." *Id.* "Every Act of Congress occupies some field, but we must know the boundaries of that field before we can say that it has precluded a state from the exercise of any power reserved to it by the Constitution." *Keller v. City of Fremont*, 719 F.3d 931, 942 (8th Cir. 2013) (quoting *DeCanas v. Bica*, 424 U.S. 351, 360 n.8 (1976) *superseded by statute on other grounds as recognized by Kansas*, 589 U.S. at 195).

Courts take care to narrowly define the preempted field. *Id.* at 943. Immigration law in toto is not preempted. *See DeCanas*, 424 U.S. at 354–356. The scope of a given field is narrower, as shown by the Supreme Court's section-by-section analysis in *Arizona*. What's more, the federal government has important interests and statutory authority in many areas—yet state law is not preempted there. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 573–581 (2009) (drug safety and enforcement); *California v. ARC Am. Corp.*, 490 U.S. 93, 101–102 (1989) (antitrust). More is required to define a field's scope.

1. Iowa agrees that the federal government has broad power to regulate immigration. The federal government alone naturalizes and admits aliens. *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1876); *Truax v. Raich*, 239 U.S. 33, 42 (1915) (defining the federal government's "authority to control immigration" as the power "to admit and exclude aliens"); *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419–421 (1948) (noting federal power over admission, length of stay, and naturalization but recognizing state

authority outside these areas "[i]n the absence of overriding federal treaties").

But the Supreme Court "has never held that every state enactment which in any way deals with aliens" is "pre-empted by this constitutional power, whether latent or exercised." *DeCanas*, 424 U.S. at 355. The Court has not extended field preemption to immigration laws beyond alien registration. *See, e.g.*, *Kansas*, 589 U.S. at 210 (rejecting overbroad immigration field preemption); *Arizona*, 567 U.S. at 401, 403–413 (federal government "has occupied the field of alien registration" but analyzing other sections using obstacle preemption). That is true even though some courts have suggested field preemption extends to employment-authorization and immigration document fraud. *See Arizona v. Arpaio*, 76 F. Supp. 3d 833, 842 (D. Ariz. 2015), *rev'd in part and vacated in part*, 821 F.3d 1098 (9th Cir. 2016); *see also United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013). SF2340 does not affect these areas. Considering the Supreme Court's increasing skepticism of implied field preemption, this Court should decline to do so, particularly in a pre-enforcement, facial challenge.

Even Supreme Court rulings based on constitutional authority have not found exclusivity beyond the creation of admission, naturalization, and removal standards. *See, e.g.*, *Chy Lung*, 92 U.S. at 280; *Truax*, 239 U.S. at 42; *Takahashi*, 334 U.S. at 419–421. SF2340 affects no such standards.

Instead, SF2340 is an exercise of Iowa's inherent police power to enforce federal admissibility standards within its borders. Federal law does not supersede States' police powers unless preemption was Congress' clear and manifest purpose. *Wyeth*, 555 U.S. at 565. And the States' "power to exclude has long been recognized as inherent in sovereignty," *Arizona*, 567 U.S. at 418, (Scalia, J., concurring in part and dissenting in part) (collecting historical authorities), including by the Supreme Court, *see Mayor, Alderman and Commonalty of City of New York v. Miln*, 36 U.S. (11 Pet.) 102, 130–132 (1837).

The federal government's exclusive authority to naturalize and admit does not necessarily displace the States' police power to exclude aliens in violation of federal standards. *See Chamber of Comm. v. Whiting*, 563 U.S. 582, 588, 600 (2011) (federal interest in immigration does not supersede States'

"broad authority under their police powers" to enact immigration-related laws); *Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("[T]he States do have some authority to act with respect to illegal aliens, at least where such action mirrors federal objectives and furthers a legitimate state goal"). "The central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens *lawfully* in the country." *DeCanas*, 424 U.S. at 359 (emphasis added). Once an alien violates federal admissibility standards, States have power to prosecute the violation.

2. SF2340 does not regulate admissibility standards, nor does it apply to those lawfully in the country. Rather, it allows the State to prosecute an alien who enters, attempts to enter, or is found in the State after illegally reentering the country while subject to a reentry bar. *See* Iowa Code § 718C.2(1). Illegal reentry is thus not synonymous with admission. *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1034 (10th Cir. 2011) (citing 8 U.S.C. §§ 1231(a)(5), 1326(a)).

SF2340 does not apply unless the federal government determined an alien should not be admitted, and then the alien illegally reentered. Iowa Code § 718C.2(3). Further, Iowa officials do not make independent admissibility determinations. *See id.* Just as before SF2340, Iowa officials may obtain verification of a person's immigration status from federal officials. 8 U.S.C. § 1373(c).

SF2340 permits abating an SF2340 prosecution if federal immigration authorities have made a final determination that a person lawfully entered the country. *See* Iowa Code § 718C.6. So SF2340 simply makes it a state crime to enter Iowa after committing a federal immigration crime.

3. SF2340 also does not set removal standards. Section 4 provides for a judicial order detailing how an illegal alien will be taken to an Iowa port of entry, at which point the case is passed on to federal immigration officers. Removal is a question for those officers. Nothing in SF2340 gives Iowa authority to remove a person from Iowa's port of entry, much less the country.

SF2340 does not "establish a brand new immigration system" with entry and removal. Dkt. 9-1 at 7. It operates in fields open for complementary state regulation, and, as explained below, is limited to

conduct proscribed under federal criminal law. Plaintiff's resort to field preemption fails.

But if this Court decides that Section 4 improperly enters a supposedly preempted field, then only Section 4 should be enjoined. *See* Iowa Code § 4.12; *Merrill Lynch*, 414 U.S. at 127.

4. Even if the Court were to define the field more broadly, the federal government must occupy that field to claim preemptive effect. *Cf. Parker*, 317 U.S. at 358. But Plaintiff has ignored its statutory obligations. Its inaction is "akin to posting a flashing 'Come In, We're Open' sign on the southern border." *Florida v. United States*, 660 F. Supp. 3d 1239, 1253 (N.D. Fla. 2023); *Texas v. Biden*, 20 F.4th 928, 982 (5th Cir. 2021), *rev'd*, 597 U.S. 785 (2022). The federal government should not be permitted to invoke field preemption based on laws it declines to enforce. *Cf. Arizona*, 567 U.S. at 397 (premising the Court's decision on federal efforts to carry out federal immigration obligations).

After all, even if a state law would normally be field preempted, such conclusion "does not affect the right of States to enforce their [field preempted] laws at times when the Federal Government has not occupied the field and is not protecting the entire country" from the conduct the federal law should, if applied, protect against. *Pennsylvania v. Nelson*, 350 U.S. 497, 500 (1956).

   *2.      SF2340 aligns with the federal immigration scheme.*

Obstacle preemption is constitutionally unsound. The doctrine "rests on judicial guesswork about 'broad federal policy objectives, legislative history, or generalized notions of congressional purposes that are not contained within the text of federal law.'" *Kansas*, 589 U.S. at 213–215 (Thomas, J., concurring). Federal law may preempt state law only when the two stand in contradiction. Pointing to the Executive Branch's immigration policies should not preempt a duly enacted state law. The Executive's non-enforcement priorities do not amount to "Laws of the United States." Indeed, "[t]here is no federal preemption *in vacuo*, without a constitutional text, federal statute, or treaty made under the authority of the United States." *Kansas*, 589 U.S. at 202 (quotation omitted). Unable to point to a federal law that contradicts SF2340, Plaintiff should not be allowed to resort to the "purposes

and objectives" guesswork that obstacle preemption requires.

Even so, obstacle preemption does not preempt SF2340. Federal law seldom bars States from adopting federal law for state purposes. *See, e.g.*, *Gilbert v. Minnesota*, 254 U.S. 325, 330–331 (1920). "[T]here are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or state prosecutors." *Kansas*, 589 U.S. at 212. "[I]n the vast majority of cases where federal and state laws overlap, allowing the States to prosecute is entirely consistent with federal interests." *Id.* Overlap does not mean invalidity. *California v. Zook*, 336 U.S. 725, 733 (1949).

The Supreme Court has never held that state laws cannot overlap with federal criminal immigration statutes, outside alien registration. For example, while *Arizona* rejected state criminal penalties, it did so based on context. *See Arizona*, 567 U.S. at 400–410. That Court considered four separate state provisions and struck down only one on field preemption grounds (because it touched on alien registration), *id.* at 402–403. *Arizona* recognized that where the State is not operating in an occupied field, "a State *may* make violation of federal law a crime." *Id.* at 402 (emphasis added).

*Arizona* enjoined two other provisions on obstacle preemption grounds. But the reasons are key: they were obstacle preempted for criminalizing conduct that was not a federal crime, and thus frustrated the federal scheme to treat those violations with civil penalties. *Id.* at 405, 407. One section criminalized "removability," which is a civil—rather than a criminal—status. *Id.* at 407 ("As a general rule, it is not a crime for a removable alien to remain present in the United States") (citations omitted). Indeed, after an alien is admitted and becomes removable, federal law gives the federal government discretion to facilitate that removal. *Id.* at 410. In contrast, Congress criminalized illegal reentry with mandatory language. 8 U.S.C. § 1326 (person in violation of illegal reentry law "shall" be punished). Unlike the obstacle-preempted provisions in *Arizona*, SF2340 Iowa's law neither goes further than federal law nor does it make criminal something that is not also federally criminal.

SF2340 is more like the law in *Kansas*, where the Supreme Court upheld an identity-theft statute

criminalizing the use of a false identity for work authorization. 589 U.S. at 195. The Court distinguished *Arizona* based on the federal criminal analogue and stated, "[t]he mere fact that state laws like the Kansas provision at issue overlap to some degree with federal criminal provisions does not even begin to make the case for conflict preemption." *Id.* at 211. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Id.* at 212. Given the expanding reach of federal criminal law, "there are now many instances in which a prosecution for a particular course of conduct could be brought by either federal or State prosecutors." *Id.* "Our federal system would be turned upside down if we were to hold that federal criminal law preempts state law whenever they overlap," and there is no basis for inferring such preemption. *Id.* Rather, "in the vast majority of cases where federal and state laws overlap, allowing States to prosecute is entirely consistent with federal interests." *Id.* So too here.

Plaintiff nonetheless contends that SF2340 will disrupt the federal immigration scheme. *See* Dkt. 7-1 at 15–16. But under SF2340, federal officials retain their discretion to offer asylum or other removal relief at U.S. ports of entry. And the federal government keeps exclusive authority to set the destination for removed aliens because Iowa removes no one. In any event, Plaintiff's argument targets Section 4 and, if correct, warrants enjoining only that section.

Ultimately, SF2340 makes it a crime to violate federal criminal immigration law in Iowa. Congress made it a crime for an alien to reenter the country after having been "denied admission," been involuntarily "removed," or having departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a). SF2340 creates an analogue. Iowa Code § 718C.2(1). Both laws provide similar criminal penalties and allow for voluntary departure.

There is no conflict with federal law. Further, because SF2340 merely creates a state analogue to federal criminal reentry statutes, there also is no conflict with current U.S.-foreign relations. Federal law already criminalizes illegal reentry, and removal authority remains with the federal government, so

SF2340 creates no *new* implications for foreign relations.

2. Plaintiff argues that SF2340 allows the State to overstep the bounds of state cooperation with immigration enforcement. This is incorrect. Many parts of the federal immigration code call for State-federal cooperation in federal enforcement. *See*, *e.g.*, 8 U.S.C. §§ 1101(a)(15)(T)(i)(III)(aa), 1101(a)(15)(U)(iii), 1324(c), 1357(g)(1)–(10); 18 U.S.C. § 758; 22 U.S.C. § 7105(c)(3)(C)(i). The "federal scheme" thus "leaves room" for enforcement of a state law like SF2340. *Arizona*, 567 U.S. at 412–413 (citing *Whiting*, 563 U.S. at 609–610).

SF2340 authorizes state law enforcement to do what it already could. SF2340 enforcement begins with contacting federal government to determine a person's immigration status, because Iowa does not maintain an independent immigration database. Federal law expressly permits State or local government entities to make these inquiries. 8 U.S.C. §§ 1373(a), 1644. Federal law even requires the federal government to respond. *See id.* § 1373(c); *cf. Whiting*, 563 U.S. at 582 (rejecting preemption challenge and finding federal law either permitted or encouraged use of federal work authorization database to impose licensing sanctions for hiring illegal aliens).

If the inquiry reveals a person in Iowa is violating federal criminal immigration law and state law, then SF2340 permits an order requiring that person to go to a port of entry. Federal law expressly permits state officials to "'communicate with the [Federal Government] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States.'" *Arizona*, 567 U.S. at 411–412 (quoting 8 U.S.C. § 1357(g)(10)(A)).

The federal government argues communication and cooperation are permitted only in "limited circumstances." Dkt. 7-1 at 16 (quoting *Arizona*, 567 U.S. at 408, 409). Not so. "Congress has made clear that no formal agreement or special training needs to be in place" for state officers to communicate with the federal government about immigration status. *Arizona*, 567 U.S. at 411–412. "More broadly, no agreement is necessary in order for a State or local officer 'otherwise to

cooperate . . . in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States.'" Michael John Garcia & Kate M. Manuel, Cong. Research Serv., R41423, Authority of State and Local Police to Enforce Federal Immigration Law 5 (2012) (quoting 8 U.S.C. § 1357(g)(10)). To be sure, the Court in *Arizona* held that § 1357(g)(10) did not permit state officials to arrest individuals based on their civil removal status, but that holding did not extend to individuals violating federal *criminal* immigration provisions. *Arizona*, 567 U.S. at 410.

3. Finally, the federal government and amicus American Immigration Lawyers Association argue SF2340 conflicts with federal law because it criminalizes legal immigration statuses. Dkt. 7-1 at 15–16; *see also* 4:24-cv-00161, Dkt. 31. It does not. Plaintiff's argument focuses on stylized scenarios that fail to show why SF2340 is unconstitutional in every—or even most—circumstances. Plaintiff's arguments also disregard prosecutorial and judicial discretion in the enforcement of SF2340.

SF2340 does not apply to aliens who are legally admitted to the United States. And it does not prevent an alien from seeking asylum, or any other relief from federal authorities. As explained above, orders issued under SF2340 merely specify how the alien will be transported to a port of entry. *See* Iowa Code § 718C.4. Once the alien arrives, federal officers make the ultimate removal determination; that determination necessarily includes the assessment of any relevant legal defenses.

Plaintiff's argument also overstates Section 6's scope. Dkt. 7-1 at 22. Section 6 prevents no one from "participat[ing] fully in federal immigration procedures." Dkt. 7-1 at 22. Under its express terms, Section 6 limits abatement to federal immigration determinations that are pending or yet to be initiated. *See* Iowa Code § 718C.6. It does not apply to final federal immigration determinations. *See Kucera*, 745 N.W.2d at 487. Indeed, abatement is required when the alien has lawful status. *See Weissenberger*, 740 N.W.2d at 436 (explaining States must comply with federal law).

Though Section 6 prohibits abatement for pending or will-be initiated federal immigration determinations, it does not prohibit discretionary stays. Of course, if a case is stayed for an asylum

proceeding, the prosecution would then abate in the event of a final grant of asylum.

4. Plaintiff's arguments illustrate the problems in pre-enforcement, facial challenges: a pre-enforcement challenge is improper where there is a plausible constitutional reading and uncertainty as to how state courts will interpret the law. This is true for at least four fundamental reasons.

*First*, and most basically, Iowa courts interpreting Iowa law know that "[i]f the law is reasonably open to two constructions . . . the court must adopt the interpretation that upholds the law's constitutionality." *Abrahamson*, 696 N.W.2d at 593.

*Second* "[t]here is basic uncertainty about what the law means and how it will be enforced." *Arizona*, 567 U.S. at 415. It would be improper to enjoin SF2340 "before the state courts had an opportunity to construe it and without some showing that enforcement of the provision in fact conflicts with federal immigration law and its objectives." *Id.* at 416. "The fact that [a law] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* at 425 (Scalia, J., concurring in part and dissenting in part) (quoting *Salerno*, 481 U.S. at 745).

*Third*, several federal courts of appeals—including the Eighth Circuit—analyzing whether federal law preempted a state law touching upon immigration issues, took the same cautious approach as did the Supreme Court in *Arizona*. *See, e.g.*, *Keller*, 719 F.3d at 945 (uncertainty as to how a law will be interpret and applied "illustrate[s] why facial challenges are disfavored and, accordingly, why Plaintiffs' facial challenge must fail."); *Georgia Latino All. For Hum. Rts. v. Governor of Georgia*, 691 F.3d 1250, 1267–68 (11th Cir. 2012); *United States v. Alabama*, 691 F.3d 1269, 1284 (11th Cir. 2012).

*Fourth*, Plaintiff may invent scenarios where SF2340 might be applied in tension with federal law, but that cannot show Plaintiff is "likely to prevail on the merits." *Rounds*, 530 F.3d at 730. To succeed, there must be no circumstance where the statute can be constitutionally applied. *Furlow*, 52 F.4th at 400. Plaintiff's hypotheticals do not make that showing. After all, courts "must be careful not to go

beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Rep. Party,* 552 U.S. 442, 449–450 (2008).

*Finally,* if this Court decides Section 4 creates an "obstacle" to the federal immigration scheme, then only that provision should be enjoined. *See* Iowa Code § 4.12; *Merrill Lynch*, 414 U.S. at 127.

### D.     The Foreign Commerce Clause does not bar criminalizing conduct entirely unrelated to foreign commerce.

> 1.     *The Supreme Court has expressly recognized States retain their police power to punish federally illegal immigration.*

As a sovereign, Iowa holds the power to exclude unlawfully present persons from its territory, subject to limitations expressed in the Constitution and Laws of the United States. That power predated the Constitution, and nothing in the Constitution removed that enforcement authority from the States. *Arizona*, 567 U.S. at 418 (Scalia, J., concurring in part and dissenting in part) (detailing history of this power within State sovereignty). The power to set the standards for naturalization and alien admissibility "was given to Congress not to abrogate States' power to exclude those they did not want, but to vindicate it." *Id.*

The Supreme Court confirmed that principle in *Miln*, 36 U.S. (11 Pet.) at 130–132. *Miln* upheld a state immigration statute requiring each immigrant arriving at the port of New York to be listed in a report; the master of the ship would be fined for each unreported immigrant brought into port. *Id.* The Court upheld the statute because "[t]he sovereign may forbid the entrance of" foreigners into its land, and "prevent New York from being burdened by an influx of persons brought thither in ships, either from foreign countries, or from any other of the states." *Id.* at 132–133.

The law challenged in *Miln* thus amounted to an exercise of the State's police powers and so was not a regulation of commerce. *Id.* (reasoning it was a regulation "not of commerce, but police" and only operated "within the jurisdiction of New York" over people who were "found within" New York). The statute related only to "prevent[ing]" the immigrants "from becoming chargeable as paupers," something that is "within the competency of the states." *Id.* at 133.

*Miln* distinguished *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1 (1824), saying that the ship at issue in *Gibbons* had "a coasting license from the United States" authorizing it to navigate the same waters the State sought to regulate differently. *Miln*, 36 U.S. (11 Pet.) at 135.

*Miln* fits into federal jurisprudence with *Fox v. Ohio*, where the Supreme Court held that Ohio could punish counterfeiting money, even though the Constitution gives that authority to Congress, because it was uniquely within the State's police power and not in conflict with federal law. 46 U.S. (5 How.) 410, 434–435 (1847); U.S. Const. art. I, § 8, cl. 6. These cases establish that the States lack the right to regulate commercial activity that is lawful under federal law, but they do have the right—under their retained police powers—to regulate activity that is *unlawful* under federal law.

That makes sense. The fundamental rule of federal-State relations is that States cannot interfere with something authorized under federal law. *See, e.g.*, *Pharm. Rsch. & Mfs. of Am. v. McClain*, 95 F.4th 1136, 1145 (8th Cir. 2024). But if something is illegal federally, there is no bar to the States using their police power to, using the same standard, make it illegal under state law.

The Foreign Commerce Clause therefore does not preclude States from enacting intra-territorial laws that prevent their citizens from being overburdened by illegal immigration. SF2340 operates exclusively intra-territorially and kicks in only if the conduct is also illegal federally. *Miln* shows that statutes like SF2340 are within the State's police power. SF2340 does not interfere with federal law in any way because a violation of federal law is a necessary predicate for SF2340. Iowa is thus allowed to enforce SF2340 to the extent that it does not conflict with federal immigration law.

The United States never tries to explain why a law like SF2340 is distinct from the law at issue in *Miln*. Instead, it simply says that the movement of persons between States and foreign countries is commerce. U.S. brief at 19. But the United States forgets two key principles here.

*First*, *Gibbons* involved a party whose business engaged in interstate transportation. 22 U.S. (9 Wheat.) at 239–240. So the Court held that involved interstate commerce. SF2340 involves nothing

of the sort. *Second*, the United States assumes that SF2340 would affect foreign relations because it regulates commerce with foreign nations. Dkt. 7-1 at 20–21. But SF2340 has nothing to do with commerce with foreign nations. Nor would it even affect foreign relations because, by creating a state analogue to a federal crime, SF2340 creates no new implications on foreign relations.

       2.      *The United States relies on an overbroad Commerce Clause reading.*

The United States tries to stretch the Foreign Commerce Clause beyond its breaking point. There are at least two flaws in that approach. *First*, the Dormant Commerce Clause comes into play only when Congress has been dormant—it has not regulated in an area. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023). So when Congress does regulate in an area, it necessarily displaces the doctrine. *See Maine v. Taylor*, 477 U.S. 131, 139–140 (1986). And the premise of the United States's arguments here is that Congress has extensively regulated immigration. The United States cannot have it both ways. It can argue either that Congress has regulated in an area, or that it has not. The United States's preemption arguments foreclose its theory here.

*Second*, Plaintiff relies on cases involving taxation or State-created monopolies. *Japan Line, Ltd. v. Los Angeles County* involved a county trying to tax ships based in Japan, and the Supreme Court said (1) that the ship would be subject to double taxation (in Los Angeles and Japan) and (2) the tax would create a patchwork of different international shipping taxes where there needed to be one national approach. 441 U.S. 434, 436–437 (1979). But SF2340 does not involve taxation, nor does it create a patchwork of immigration law. It does not even kick in until *after* both the United States has ordered the alien to leave and the alien illegally reentered the country thereby violating federal law.

In the end, the United States argues that SF2340 burdens foreign commerce by discriminating against aliens who enter from abroad, but that requires an overbroad reading of SF2340. SF2340 does not discriminate based on alienage. It discriminates based on aliens having been ordered to leave the country and not reenter, and instead choosing to violate federal—and now Iowa—law.

**E.**     **Iowa has a constitutional self-defense power when the federal government abdicates its own duties.**

Even if SF2340 implicates preemption or the Dormant Commerce Clause, it should survive through Iowa's constitutional self-defense power. U.S. Const. art. I, §10, cl. 3 (States may respond when "actually invaded."). "[T]he States did not part with that power of self-preservation which must be inherent in every organized community." *Smith v. Turner*, 48 U.S. (7 How.) 283, 400 (1849) (McLean, J.); *see also* Robert G. Natelson & Andrew T. Hyman, *The Constitution, Invasion, Immigration, and the War Powers of States*, 13 British J. Am. Leg. Studies 1 (2024). Lying at the crossroads of a trafficking enterprise stoked by cartels exploiting the illegal immigration crisis, Iowa has the constitutional right to invoke its self-defense power and use SF2340 to combat this invasion. Plaintiff does not establish there are constitutional applications of SF2340. *Furlow*, 52 F.4th at 400.

**II.     The Other Factors Weigh Against An Injunction.**

Plaintiff's failure to show likelihood of success is fatal; the Court need not proceed further. *See Rounds*, 530 F.3d at 732. But those factors also weigh against an injunction. Plaintiff fails to show why an injunction is necessary to prevent harm, or why their harms outweigh harm to Iowa.

Plaintiff does not face irreparable harm. If the United States believes Iowa is prosecuting someone improperly, it can intervene in that proceeding. 28 U.S.C. § 517. Indeed, the United States does so all the time. *See, e.g.*, *U.S. Dep't of Veterans Affs. v. Boresi*, 396 S.W.3d 356, 358 (Mo. 2013) (intervening in state worker's compensation proceedings); *Oceanview Home for Adults, Inc. v. Zucker*, 188 N.Y.S.3d 773, 779 (N.Y. App. Div. 2023) (statement of interest in state Fair Housing Act proceedings); *West v. City of Tacoma*, 456 P.3d 894, 902 (Wash. App. 2020) (statement of interest regarding the disclosure of federally protected records under state law). It is unclear why the United States believes it must receive a pre-enforcement injunction to avoid irreparable harm.

That is particularly true as SF2340 applies only after the United States has already determined the alien to be illegal. Because Iowa follows the United States's lead on the alien's status, Iowa cannot

harm the United States nor its foreign relations. Iowa steps in only after the United States says so.

As to the balance of harms, the State faces irreparable harm from an injunction. Iowa is at the crossroads of the human trafficking enterprise that is stoked by cartels exploiting the illegal immigration crisis. Enforcing SF2340 to deter human trafficking and other byproducts of illegal immigration is firmly within the public interest. And Iowa is burdened by tens of thousands of people who have been ordered to leave but refuse to do so. Iowa must give public services to illegal aliens, its public transportation system must accommodate them, and its police officers must respond to the crimes they suffer or commit. Those harms are particularly poignant as SF2340 implicates Iowa's core sovereign right to use its police power to control who may and may not enter its territory. *See Miln*, 36 U.S. (11 Pet.) at 132; *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (implying that "the State's interest in the enforcement of its criminal laws" is among the most important interests).

An injunction is not in the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes . . . it suffers a form of irreparable injury." *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers); *see Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) ("Every day that a State's duly-enacted statutes are enjoined is an irreparable harm."). An injunction would "thwart [Iowa's] presumptively reasonable democratic process." *Rounds*, 530 F.3d at 732–733. Indeed, statutes are supposed to be "presumed constitutional and all doubts are resolved in favor of constitutionality." *Arkansas Times LP v. Waldrip as Tr. of Univ. of Ark. Bd. of Trustees*, 37 F.4th 1386, 1393 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 774 (2023).

## CONCLUSION

For these reasons, the Court should deny the preliminary and permanent injunction.

Respectfully submitted,

BRENNA BIRD
Attorney General of Iowa

/s/ Eric Wessan
Eric Wessan
*Solicitor General*

/s/ Patrick C. Valencia
Patrick C. Valencia
*Deputy Solicitor General*

/s/ Breanne A. Stoltze
Breanne A. Stoltze
*Assistant Solicitor General*

/s/ Nicholas Davis
Nicholas Davis
*Assistant Attorney General*

Iowa Department of Justice
Hoover State Office Building
Des Moines, Iowa 50319
(515) 823-9117 / (515) 281-5191
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov
patrick.valencia@ag.iowa.gov
breanne.stoltze@ag.iowa.gov
nick.davis@ag.iowa.gov

ATTORNEYS FOR DEFENDANTS

*Original filed electronically.*
*Copy electronically served on all parties of record.*

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served on counsel for all parties of record by delivery in the following manner on May 31, 2024:

☐ U.S. Mail           ☐ FAX
☐ Hand Delivery     ☐ Overnight Courier
☐ Federal Express    ☐ Other
☒ CM/ECF

Signature: /s/ Breanne A. Stoltze