IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>THE STATE OF IOWA, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>) CASE NO. 4:24-CV-00161-SHL-SBJ<br>)<br>)<br>) CASE NO. 4:24-CV-00162-SHL-SBJ<br>)<br>)<br>) |
| IOWA MIGRANT MOVEMENT FOR JUSTICE, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>BRENNA BIRD, in her official capacity as Attorney General of Iowa, *et al.*,<br><br>    Defendants. | )<br>)<br>)<br>) **BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICI CURIAE* IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY OR PERMANENT INJUNCTION**<br>)<br>)<br>)<br>) |

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................... II

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................... 2

    I.    STATES RETAIN THE AUTHORITY TO REGULATE IMMIGRATION UNDER THE CONSTITUTION SUBJECT ONLY TO CONGRESS'S AUTHORITY TO PREEMPT SUCH REGULATION. ................................................ 2

    II.    CONGRESS HAS NOT PREEMPTED STATE LAWS CRIMINALIZING ILLEGAL REENTRY AND HAS EXPLICITLY RECOGNIZED THAT ALIENS MAY STIPULATE TO THEIR REMOVAL DURING A CRIMINAL TRIAL UNDER STATE LAW. ........................................................................ 4

CONCLUSION ................................................................................................................................. 6

# TABLE OF AUTHORITIES

**_Cases_**                                                                                                    Page(s)

*Arizona v. United States*,
    567 U.S. 387 (2012)..................................................................................................3

*Mayor of New York v. Miln*,
    36 U.S. 102 (1837)....................................................................................................3

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
    584 U.S. 453 (2018)..................................................................................................3

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892)..................................................................................................3

**_Statutes_**                                                                                                 Page(s)

8 U.S.C. § 1101(a)(15)...................................................................................................4

8 U.S.C. § 1153 ..............................................................................................................4

8 U.S.C. § 1182 ..............................................................................................................4

8 U.S.C. § 1227 ..............................................................................................................4

8 U.S.C. § 1325 ..............................................................................................................4

8 U.S.C. § 1326 ...........................................................................................................4, 6

8 U.S.C. § 1326(a) .........................................................................................................4

8 U.S.C. § 1326(b) ......................................................................................................5, 6

Iowa Code § 718C.2(1)..................................................................................................4

Iowa Code § 718C.4 ......................................................................................................2

Iowa Code § 718C.4(3)(a) .............................................................................................6

SF 2340, 90th Gen. Assembly (2024)...................................................................... *passim*

**_Miscellaneous_**                                                                                            Page(s)

Declaration of Independence .........................................................................................3

## **INTRODUCTION**

Iowa and other States have taken measures to combat unlawful immigration in response to the federal government's ongoing abdication of its duty to protect States from invasion and to take care that the nation's immigration laws are faithfully executed. Since January 20, 2021, the Biden administration has purposely facilitated mass illegal entries into this country. It has temporarily paused all removals, gutted immigration enforcement guidelines, terminated the Migrant Protection Protocols (colloquially known as the "Remain in Mexico policy"), halted all border wall construction projects, reinstated "catch and release" at the border, weakened asylum requirements, and adopted mass parole programs.

The abdication of both this administration's statutory duty to secure the border and its constitutional obligation to protect the States from invasion has resulted in an estimated 5.5 million illegal aliens' crossing the border from inauguration day in 2021 through fiscal year 2022. FAIR Analysis: 5.5 Million Illegal Aliens Have Crossed our Borders Since Biden Took Office—How is Secretary Mayorkas Still Employed?, available at: https://www.fairus.org/press-releases/border-security/fair-analysis-55-million-illegal-aliens-have-crossed-our-borders (last visited June 4, 2024). The number of encounters has only increased since. In fiscal year 2023 alone, Customs and Border Protection ("CBP") encountered over 3.2 million aliens, including nearly 2.5 million at the southwest border. CBP, Nationwide Encounters, available at: https://www.cbp.gov/newsroom/stats/nationwide-encounters (last visited June 4, 2024). And there have been nearly 2 million encounters in fiscal year 2024 to date. Id. Moreover, 85 percent of aliens encountered on the southern border are released into the United States. Fox News, Mayorkas tells Border Patrol agents that 'above 85%' of illegal immigrants released into US: sources, available at: https://www.foxnews.com/politics/mayorkas-tells-border-patrol-agents-illegal-immigrants-released-into-us-sources (last visited June 4, 2024).

In the absence of any meaningful federal action, the Iowa legislature passed and the Governor signed Senate File 2340 ("SF 2340"), which mirrors the federal crime of illegal reentry and authorizes State judicial officers to order offenders to return to the foreign nation from which they illegally entered. SF 2340 §§ 2, 4 (to be codified at Iowa Code §§ 718C.2 and 718C.4, respectively). In some circumstances, the offending alien must agree or stipulate to the order of return. SF 2340 § 4(3)(a) (Iowa Code § 718C.4(3)(a)). Although SF 2340 parallels the federal criminal offense for illegal reentry and does not interfere with Congress's power to decide which classes of aliens are admissible or removable, Plaintiffs in these two cases seek to enjoin the enforcement of SF 2340, arguing that it is preempted by federal law. But there is nothing in federal law that suggests that Congress sought to preempt State laws criminalizing illegal reentry. Instead, Congress explicitly recognized that aliens may stipulate to removal during (or not during) a criminal trial under State law. This recognition demonstrates that Congress did not intend to preempt State laws under which aliens may stipulate to removal. Accordingly, Plaintiffs cannot not demonstrate a likelihood of success on their facial preemption claim and the Court should deny Plaintiffs' motions on that basis.

## ARGUMENT

I. **STATES RETAIN THE AUTHORITY TO REGULATE IMMIGRATION UNDER THE CONSTITUTION SUBJECT ONLY TO CONGRESS'S AUTHORITY TO PREEMPT SUCH REGULATION.**

"When the original States declared their independence, they claimed the powers inherent in sovereignty—in the words of the Declaration of Independence, the authority 'to do all ... Acts and Things which Independent States may of right do.'" *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) (quoting Declaration of Independence ¶ 32). Inherent in the sovereignty of an independent State, "and essential to self-preservation," is the power "to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon

such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892). "As a sovereign, [Iowa] has the inherent power to exclude persons from its territory, subject only to those limitations expressed in the Constitution or constitutionally imposed by Congress." *Arizona v. United States*, 567 U.S. 387, 417 (2012) (Scalia, J., concurring in part and dissenting in part); *id.* at 418 ("There is no doubt that 'before the adoption of the constitution of the United States' each State had the authority to 'prevent [itself] from being burdened by an influx of persons.'") (quoting *Mayor of New York v. Miln*, 36 U.S. 102, 132-133 (1837)).

Further, as Justice Scalia demonstrated in his opinion in *Arizona*, 567 U.S. at 420-21, the States did not surrender their power to regulate immigration upon entering the Union. *Id.* (noting that the *Miln* Court held that the power to regulate the entrance of foreigners remained with the States following the adoption of the Constitution). Because the States retained the authority to regulate immigration under the Constitution, the States' authority can only be preempted by Congress.

Congress has adopted extensive regulations governing immigration. For example, Congress has defined the classes of aliens who are admissible and removable. *See* 8 U.S.C. §§ 1101(a)(15) (defining classes of nonimmigrant aliens); 1153 (allocating immigrant visas among various classes of aliens); 1182 (defining inadmissible aliens); 1227 (defining deportable aliens). Congress has also criminalized illegal entry and reentry. *Id.* at §§ 1325, 1326. No one questions Congress's power to set nationwide immigration policy, and no State may adopt immigration policies that conflict with federal immigration law. The only question in these cases is whether Congress sought to preempt State laws such as SF 2340, which mirrors the federal crime for illegal reentry under 8 U.S.C. § 1326.

## II. CONGRESS HAS NOT PREEMPTED STATE LAWS CRIMINALIZING ILLEGAL REENTRY AND HAS EXPLICITLY RECOGNIZED THAT ALIENS MAY STIPULATE TO THEIR REMOVAL DURING A CRIMINAL TRIAL UNDER STATE LAW.

Mirroring the federal crime of illegal reentry, SF 2340 makes it a crime to enter, attempt to enter, or be found in Iowa after having been "excluded, deported, or removed," or having departed the United States "while an order of exclusion, deportation, or removal is outstanding." Iowa Code § 718C.2(1). Congress likewise criminalized reentry by aliens who have been "denied admission," involuntarily "removed," or have departed the country "while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. § 1326(a).

Plaintiffs in these cases argue that SF 2340 is both field preempted and conflict preempted. ECF Case 4:24-cv-00161, Doc. 9-1 at 12-22; ECF Case 4:24-cv-00161, Doc. 3-2 at 19-27.[1] Iowa demonstrates that that Plaintiffs' arguments are without merit and that SF 2340 is not preempted because it is consistent with federal immigration law and does not conflict with parallel federal provisions. ECF Case 4:24-cv-00162, Doc. 19 at 18-28. But neither Plaintiffs nor Iowa have pointed out that Congress explicitly recognized that States may permissibly play a role in determining removability under the scheme enacted by Congress.

As part of its statute criminalizing illegal reentry, Congress provided for sentence enhancements for certain classes of criminal aliens. *See* 8 U.S.C. § 1326(b). In that sentence enhancement provision, Congress provided: "For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under *either* Federal *or State law*." 8 U.S.C. § 1326(b) (emphasis added). Although this definition of "removal" is limited to "the purposes of this subsection," Congress

---

[1] Page numbers refer to the ECF header pagination, not the internal document pagination.

4

acknowledged the practice of aliens' stipulating to their removal in State courts of law. And, instead of discouraging or seeking to prevent such practices, Congress permits such stipulations to constitute the predicate "removal" at least for sentence enhancement purposes. SF 2340 includes just such a "stipulate to removal" practice as Congress endorsed in § 1326(b).

Under certain circumstances, an order of return pursuant to SF 2340 may only be issued if the person charged "agrees to the order."[2] Iowa Code § 718C.4(3)(a). This "agreement in which an alien stipulates to removal" under SF 2340 falls neatly into the State court practice that Congress recognized in 8 U.S.C. § 1326(b). But more importantly, Congress's recognition that aliens may stipulate to their removal "during (or not during) a criminal trial" under "State law" suggests that Congress did not intend to preempt State involvement in making removal decisions as part of criminal prosecutions, much less to preempt State laws permitting such removal stipulations.

This is not to suggest that States may adopt their own removability standards. No one questions Congress's authority to establish nationwide standards of removability or that States must adhere to those federal standards. The simple fact is that, in enacting 8 U.S.C. § 1326, Congress was aware of the practice of aliens stipulating to removal in State courts and did nothing to discourage or prevent such practices. Instead, Congress endorsed such practices, at least for the purposes sentence enhancements under 8 U.S.C. § 1326(b). Congress's limited endorsement can hardly be said to reflect an intent to preempt State laws that punish illegal reentry or that permit aliens to stipulate to removal. Because federal law does not preempt SF

---

[2] Iowa represents that an Order of Return under SF 2340 simply "specif[ies] how the illegal alien will be transported to a port of entry and which state official will monitor compliance." ECF Case 4:24-cv-00162, Doc. 19 at 14. According to Iowa, "[o]nce the person arrives at the port of entry, removal is a question for federal immigration officers." *Id.*

2340, Plaintiffs cannot show a likelihood of success on the merits. Their facial challenge to SF 2340 should be denied on that basis.

## **CONCLUSION**

For the forgoing reasons, the Court should deny Plaintiffs' requests for preliminary or permanent injunctions.

Dated this 6th day of June 2024.            Respectfully submitted,

BELIN McCORMICK, P.C.

_____
Michael S. Boal
666 Walnut Street, Suite 2000
Des Moines, IA  50309-3989
Telephone:  (515) 283-4621
Facsimile:   (515) 558-0621
msboal@belinmccormick.com

~and~

Christopher J. Hajec*
D.C. Bar No. 492551
Matt A. Crapo*
D.C. Bar No. 473355
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
mcrapo@irli.org
* pending *pro hac vice* admission

Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 6, 2024, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

                                              /s/ Michael S. Boal