# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>　v.<br><br>THE STATE OF IOWA, *et al.*,<br><br>　　Defendants. | Case No. 4:24-cv-00162-SHL-SBJ |

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY OR PERMANENT INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT......................................................................................................................... 2

I. The United States Has Demonstrated that SF 2340 Is Unconstitutional. .................... 2

    A. SF 2340 intrudes on the exclusive federal field of entry and removal. ............... 2

    B. SF 2340 conflicts with federal law.......................................................................... 4

    C. SF 2340 violates the Foreign Commerce Clause. ................................................. 6

    D. The United States may sue in equity to enjoin SF 2340 and has standing. ........ 8

    E. The State War Clause does not justify SF 2340. ................................................... 9

II. The Equitable Factors Support Entering an Injunction. ............................................. 10

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*,
　567 U.S. 387 (2012) ................................................................................................*passim*

*Armstrong v. Exceptional Child Ctr., Inc.*,
　575 U.S. 320 (2015) ............................................................................................................ 8

*Barclays Bank PLC v. Franchise Tax Bd. of Cal.*,
　512 U.S. 298 (1994) ............................................................................................................ 8

*Buckman Co. v. Plaintiffs' Legal Comm.*,
　531 U.S. 341 (2001) ............................................................................................................ 3

*California v. United States*,
　104 F.3d 1086 (9th Cir. 1997) ............................................................................................. 9

*Chamber of Commerce v. Whiting*,
　563 U.S. 582 (2011) ............................................................................................................ 3

*Chy Lung v. Freeman*,
　92 U.S. 275 (1875) .............................................................................................................. 7

*Ex parte Young*,
　209 U.S. 123 (1908) ............................................................................................................ 9

*Florida v. United States*,
　660 F. Supp. 3d 1239 (N.D. Fla. 2023) ............................................................................... 4

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
　527 U.S. 308 (1999) ............................................................................................................ 8

*Heart of Atlanta Motel, Inc. v. United States*,
　379 U.S. 241 (1964) ............................................................................................................ 7

*Heckman v. United States*,
　224 U.S. 413 (1912) ............................................................................................................ 9

*Henderson v. Mayor of New York*,
　92 U.S. 259 (1875) .............................................................................................................. 7

*In re Debs*,
　158 U.S. 564 (1895) ............................................................................................................ 8

*Kansas v. Garcia*,
 589 U.S. 191 (2020) ............................................................................................ 4

*Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev. & Fin.*,
 505 U.S. 71 (1992) .............................................................................................. 8

*Maine v. Taylor*,
 477 U.S. 131 (1986) ............................................................................................ 8

*Mallory v. Norfolk S. Ry. Co.*,
 600 U.S. 122 (2023) ............................................................................................ 4

*Mathews v. Diaz*,
 426 U.S. 67 (1976) .............................................................................................. 2

*Mayor of New York v. Miln*,
 36 U.S. (11 Pet.) 102 (1837) ............................................................................... 7

*Nat'l Pork Producers Council v. Ross*,
 598 U.S. 356 (2023) ............................................................................................ 8

*New Jersey v. United States*,
 91 F.3d 463 (3d Cir. 1996) .................................................................................. 9

*Padavan v. United States*,
 82 F.3d 23 (2d Cir. 1996) .................................................................................. 10

*Parker v. Brown*,
 317 U.S. 341 (1943) ............................................................................................ 4

*Plyler v. Doe*,
 457 U.S. 202 (1982) ............................................................................................ 3

*Sanitary Dist. of Chi. v. United States*,
 266 U.S. 405 (1925) ............................................................................................ 9

*Takahashi v. Fish & Game Comm'n*,
 334 U.S. 410 (1948) ............................................................................................ 2

*Texas v. Biden*,
 20 F.4th 928 (5th Cir. 2021) ................................................................................ 4

*Truax v. Raich*,
 239 U.S. 33 (1915) .............................................................................................. 2

*United States v. Alabama*,
    691 F.3d 1269 (11th Cir. 2012)...................................................................................7

*United States v. Am. Bell Tel. Co.*,
    128 U.S. 315 (1888).......................................................................................................8

*United States v. San Jacinto Tin Co.*,
    125 U.S. 273 (1888).......................................................................................................8

*United States v. Texas*,
    97 F.4th 268 (5th Cir. 2024)......................................................................................2, 9

*United States v. Texas*,
    --- F. Supp. 3d ---, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024) ..........................8, 9, 10

*Va. Off. For Prot. & Advocacy v. Stewart*,
    563 U.S. 247 (2011).......................................................................................................9

*Wyandotte Transp. Co. v. United States*,
    389 U.S. 191 (1967).......................................................................................................8

**Constitutional Provisions**

U.S. Const. art. I, § 10, cl. 3 ................................................................................... 1, 9, 10

**Statutes**

8 U.S.C. § 1181 ............................................................................................................... 3

8 U.S.C. § 1182 ............................................................................................................... 3

8 U.S.C. § 1224 ............................................................................................................... 3

8 U.S.C. § 1225 ............................................................................................................... 3

8 U.S.C. § 1227 ............................................................................................................... 3

8 U.S.C. § 1228 ............................................................................................................... 3

8 U.S.C. § 1229 ............................................................................................................... 3

8 U.S.C. § 1229a............................................................................................................. 3

8 U.S.C. § 1231 ............................................................................................................... 3

8 U.S.C. § 1252c............................................................................................................. 5

8 U.S.C. § 1324 ............................................................................................... 5

8 U.S.C. § 1325 ............................................................................................... 3

8 U.S.C. § 1326 ............................................................................................... 3

8 U.S.C. § 1357 ............................................................................................... 5

28 U.S.C. § 1331 ............................................................................................. 8

28 U.S.C. § 1651 ............................................................................................. 8

Iowa Code § 902.9 .......................................................................................... 6

**Other Authorities**

Press Release (Apr. 10, 2024),
   https://perma.cc/9XTF-HYFN.................................................................. 6

Iowa Senate File 2340 ............................................................................*passim*

## INTRODUCTION

Iowa fails to rebut the United States' showing that SF 2340 is unconstitutional and that the equities counsel against its enforcement. The State concedes that the federal government has exclusive authority to admit and exclude noncitizens. *See* Resistance (Res.) at 7, 12, 13. That acknowledgement forecloses Iowa's argument that the State may permissibly "create[] a state analogue to federal criminal reentry statutes," *id.* at 17, and "enforce[] federal admissibility standards," *id.* at 13. The Supreme Court has held that "[w]here Congress occupies an entire field … even complementary state regulation is impermissible." *Arizona v. United States*, 567 U.S. 387, 401 (2012). "Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards." *Id.* Regardless of how SF 2340 is interpreted, it seeks to regulate entry into the United States and is thus field preempted.

Because the federal scheme precludes unilateral state enforcement of federal immigration law, Iowa also cannot rewrite SF 2340 to avoid conflict preemption. Iowa argues (at 17) that SF 2340 does not conflict with federal removal authority because Iowa purportedly "removes no one." But SF 2340's plain language "requir[es]" a convicted noncitizen to "return to the foreign country from which the person entered." SF 2340, § 4(4). Iowa also reads exceptions into the law that do not exist, assumes the availability of reprieve from state prosecution explicitly prohibited by SF 2340, and ignores the coercive effect of state return orders. No constitutional avoidance doctrine permits such revisions. Nor does the presumption against preemption apply in areas within the federal government's exclusive control.

Iowa's other defenses fail. Contrary to Iowa's argument, the United States has a right to seek equitable relief from the courts to defend its sovereign interests. *See In re Debs*, 158 U.S. 564, 582 (1895); *see, e.g.*, *Arizona*, 567 U.S. 387. And the State War Clause, which prohibits States from "engag[ing] in War, unless actually invaded," U.S. Const. art. I, § 10, cl. 3, does not justify SF 2340 because there is no invasion and Iowa is not engaged in war.

Because the United States has shown that SF 2340 is unconstitutional and Iowa has offered no evidence to rebut the United States' showing of harm, SF 2340 should be enjoined.

# ARGUMENT

I. **The United States Has Demonstrated that SF 2340 Is Unconstitutional.**

   A. **SF 2340 intrudes on the exclusive federal field of entry and removal.**

Despite Iowa's suggestion (at 13) that field preemption in the immigration area is limited to "alien registration," the Supreme Court has long recognized that the admission of noncitizens is exclusively a federal concern, *see Truax v. Raich*, 239 U.S. 33, 42 (1915); *Mathews v. Diaz*, 426 U.S. 67, 84 (1976), as is removal, *see Arizona*, 567 U.S. at 409; *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 419 (1948) (States have no power to determine "the period [noncitizens] may remain"). Iowa essentially so concedes. *See* Res. at 7 ("regulat[ing] admission and removal standards [is] the sole province of the federal government"), 13 (same), 12 ("The federal government alone … admits [noncitizens]."). Its effort to "create[] a state analogue" to 8 U.S.C. § 1326, *id.* at 17, intrudes into this field.

SF 2340 § 2(1) makes it a state crime for certain noncitizens to enter the United States and be present in Iowa. Section 4(4) requires state judges, "[u]pon a person's conviction" for violating § 2, to enter "an order requiring the person to return to the foreign nation from which the person entered." And § 5 creates another state crime—punishable by up to 10 years in prison—for "fail[ing] to comply" with an order to return. These provisions thus purport to "add[] a state-law penalty for conduct proscribed by federal law." *Arizona*, 567 U.S. at 400. But "the basic premise of field preemption" is "that States may not enter, in any respect, an area the Federal Government has reserved for itself." *Id.* at 402. Like Texas's SB 4, on which SF 2340 is modeled, SF 2340 is field preempted. *See United States v. Texas*, 97 F.4th 268, 280-82 (5th Cir. 2024) (*Texas SB 4*). None of Iowa's arguments in response has merit.

*First*, citing a dissent in *Arizona*, Iowa claims (at 13) that it has "inherent police power to enforce federal admissibility standards" and "to exclude [noncitizens] [who violate] federal standards." But that argument cannot be squared with the principle of field preemption or

Iowa's own concessions noted above.[1] Similarly, Iowa wrongly suggests (at 7) that the Court must "apply a presumption against preemption." The presumption is inapplicable because the admission and removal of noncitizens is not "a field which the States have traditionally occupied." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001); *see United States v. South Carolina*, 720 F.3d 518, 529 (4th Cir. 2013) (presumption "does not apply" "because immigration is an area traditionally regulated by the federal government").

*Second*, Iowa suggests (at 14) that the federal government has exclusive power only to set admissibility standards, not to enforce them. But the comprehensive federal framework sets forth not only who may enter and how, *see, e.g.*, 8 U.S.C. §§ 1181-82, 1224-25, but also an enforcement apparatus, *see, e.g., id.* §§ 1225, 1227-1229a, 1231(a)-(b), 1325, 1326. Section 1229a(a)(3) of Title 8 provides, for example, that unless otherwise specified in the INA, that section establishes the "exclusive procedure for determining whether [a noncitizen] may be admitted to the United States." Indeed, if "every State could give itself independent authority to prosecute federal [reentry] violations," the federal government would not be able to ensure consistent application of the admissibility standards. *Arizona*, 567 U.S. at 402 (cleaned up).

*Third*, Iowa argues (at 14) that the federal government's exclusive power over "admission" does not include "reentry." But that is semantics; the federal government controls who may and may not lawfully come into the country no matter the technical label applied. *See, e.g.*, 8 U.S.C. § 1182(a) (admission), (d) (parole), (f) (suspension of entry). And while Iowa argues (at 14) that SF 2340 does not apply unless there is a federal determination of illegal reentry, a prior denial of admission or removal is not equivalent to a determination that a subsequent reentry is illegal as Iowa seems to believe. *See* 8 U.S.C. § 1326(a)(2).

*Fourth*, Iowa claims (at 15) that SF 2340 is not field preempted because the federal

---

[1] The cases that Iowa cites (at 13-14) do not suggest that States have the "power to exclude [noncitizens]." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 611 (2011), upheld a state law requiring employers to check noncitizens' employment. *Plyler v. Doe*, 457 U.S. 202, 225 (1982), held that "States enjoy no power" over noncitizens' "classification" and may not deny undocumented children public education, *id.* at 226.

3

government purportedly "has ignored its statutory obligations" to enforce immigration law. That argument has no basis in fact. *See* Prelim. & Perm. Inj. Br. (Mot.) at 6-7; Jacobstein Decl. ¶¶ 17-21. More importantly, field preemption depends on whether *Congress* has regulated the field comprehensively. *See, e.g., Arizona*, 567 U.S. at 399. Iowa cites no case to the contrary.[2]

### B. SF 2340 conflicts with federal law.

The United States showed (at 15-19) that SF 2340 is conflict preempted because the federal scheme does not allow unilateral state decisions on entry or removal and SF 2340 undermines the "careful balance struck by Congress," *Arizona*, 567 U.S. at 406. Iowa responds that obstacle preemption is "constitutionally unsound." *See* Res. at 15 (citing *Kansas v. Garcia*, 589 U.S. 191, 213-15 (2020) (Thomas, J., concurring)). But obstacle preemption remains valid and only the Supreme Court can "overrul[e] its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023). To the extent Iowa argues (at 16) that there are "many instances" where both federal and state prosecutors may bring charges for "a particular course of conduct," this is not one of them.[3] Apart from interfering with Congress's uniform design, § 2 criminalizes the reentry of noncitizens who are permitted to enter the United States under federal law and flouts the congressional limitations on when state officials may act as immigration officers. *See* Mot. at 15-16, 18-19. Section 4 authorizes state judges to order noncitizens removed from the United States outside the procedures established by Congress and without the protections that federal law affords. *See id.* at 17-18. And § 6 precludes abatement of prosecution pending federal immigration proceedings. *See id.* at 17. These

---

[2] *Florida v. United States*, 660 F. Supp. 3d 1239 (N.D. Fla. 2023), and *Texas v. Biden*, 20 F.4th 928, 982 (5th Cir. 2021), do not involve field preemption. *Parker v. Brown*, 317 U.S. 341, 353-55 (1943), concerned a federal law that "contemplate[d] the existence of state programs at least until … the Secretary" acted; there was no Executive "abandonment."

[3] *Garcia* is not to the contrary. That case did not purport to overrule *Arizona* or hold that any parallel state immigration regime is lawful. Rather, *Garcia* involved a generally applicable "fraud, forgeries, and identity theft" law, which "appl[ies] to citizens and [noncitizens] alike," and the parallel state crime there did not "frustrate[] any federal interests," 589 U.S. at 198, 212. SF 2340, however, seeks to regulate entry and removal, and undermines federal interests.

4

provisions frustrate Congress's objectives in designing the entry and removal scheme.

Iowa responds by seeking to rewrite SF 2340. Iowa claims (at 6, 17) that SF 2340 § 2 is an "analogue" to 8 U.S.C. § 1326 because it purportedly excepts noncitizens who reenter with federal permission and allows the State to consider "prevailing immigration 'conditions.'" But SF 2340 does not contain the exceptions that § 1326(a)(2) expressly includes for noncitizens who have federal consent to reenter or who are not required to obtain such consent by statute. Section 2(1)(a) makes it a crime for a noncitizen to "enter[,] attempt[] to enter," or be "found in" Iowa if that noncitizen has—*in the past*—"been denied admission to or … been excluded, deported, or removed from the United States." SF 2340's text leaves no room for Iowa's interpretation. And even if it did, SF 2340 still conflicts with federal limits on when state officials may act as immigration officers and with the federal removal scheme.

Iowa maintains (at 18) that § 2 does not exceed such federal limits because in enforcing the law, state officials will contact the federal government "to determine a person's immigration status." But Congress imposed limits on the circumstances in which "state officers may perform the functions of an immigration officer," Mot. at 16 (quoting *Arizona*, 567 U.S. at 408); *see, e.g.*, 8 U.S.C. §§ 1252c (permitting detention "only for such period of time as may be required for [federal officers] to take the individual into Federal custody"); 1324 (limiting arrest authority); 1357(g)(1)-(3), (10) (governing assistance with apprehension and detention under "the direction and supervision of," or in "cooperation" with, federal officials). By authorizing state officers to arrest noncitizens for illegal reentry without federal supervision, SF 2340 exceeds those limits—just as the law struck down in *Arizona* did when it permitted state officers to arrest individuals on suspicion of being removable without federal involvement. 567 U.S. at 410.[4]

---

[4] Iowa claims (at 19) that § 1357(g)(10) applies only to civil immigration matters. The "cooperat[ion]" required by that provision, however, does not turn on the consequences ultimately applied to a noncitizen. And *Arizona*, in finding a conflict with that provision, held that the problem was "unilateral state action"—the Court did not draw the distinction that Iowa makes. 567 U.S. at 410.

5

Iowa similarly tries to rewrite § 4. SF2340 is entitled "an Act relating to … orders to return to a foreign nation," and the Governor described it as a means to "deport" noncitizens, *see* Press Release (Apr. 10, 2024), https://perma.cc/9XTF-HYFN. Yet Iowa now contends (at 7, 19) that the law "does not provide for Iowa officials' removal of a convicted" noncitizen "from Iowa or the United States"; it "merely specif[ies] how [a noncitizen] will be transported to a port of entry." But § 4(4) states that "the judge shall enter … an order requiring the person to return to the foreign nation from which the person entered." And § 5 makes it a class "C" felony—punishable by up to 10 years in prison, Iowa Code § 902.9(1)(d)—for a "person [to] fail[] to comply" with such an order. Given this severe sanction, Iowa's claim (at 8) that it "does not intend to 'accomplish' removal" cannot resolve the law's conflict with the federal removal scheme. Noncitizens are subject to the State's coercive power for noncompliance regardless of whether state officials personally conduct the removal.[5]

Iowa also seeks to downplay § 6, which prohibits "abatement of prosecution on [the] basis of immigration status determination" and creates a conflict with the federal immigration scheme, *see* Mot. at 17, 22. Despite the restriction of discretion—"[a] court *may not* abate the prosecution"—Iowa maintains (at 8-9) that state courts can nevertheless grant discretionary stays. That reading has no textual basis and, in any event, would still permit prosecution for illegal reentry without the federal safeguards and interfere with immigration proceedings.

Finally, contrary to Iowa's argument (at 20), this facial, pre-enforcement suit is not premature. Iowa seems to suggest that the United States cannot bring a facial preemption challenge in these circumstances. But a facial challenge on field-preemption grounds is proper here because field preemption's "basic premise" is that States are wholly precluded from acting within an area of exclusive federal governance, *Arizona*, 567 U.S. at 400, 402, and SF

---

[5] Iowa suggests (at 15) that the Court could simply enjoin § 4, the removal provision. But the authority to issue an order to return is predicated on state officials arresting or prosecuting a noncitizen for violating § 2, and the return order is further enforced through § 5. These interrelated provisions work as a comprehensive whole and must be enjoined together.

2340 necessarily intrudes into such an area. A pre-enforcement challenge based on SF 2340's conflicts with federal provisions is also proper here because the identified SF 2340 provisions cannot be constitutionally enforced due to those conflicts. Indeed, *Arizona* was a pre-enforcement challenge where the Supreme Court found several state-law provisions field or conflict preempted. The Court left one provision in place because the conflict with federal law would arise only if state officials abused their authority under the law, and the Court refused to presume such misconduct. 567 U.S. at 411-12, 415 (discussing § 2(B) of the state law). That is not the case here; the "practical result" of SF 2340 will be obstruction of federal law. *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012). SF 2340 is preempted on its face.

## C. SF 2340 violates the Foreign Commerce Clause.

Iowa is wrong that States have the power to punish unlawful entry into the United States. It cites (at 21) Justice Scalia's *Arizona* dissent, which relied on *Mayor of New York v. Miln*, 36 U.S. (11 Pet.) 102 (1837), for the proposition that Iowa has a sovereign right to exclude noncitizens from its territory. But *Miln* upheld only a state law requiring shipmasters to provide a list of foreign passengers disembarking, *see* 36 U.S. at 133. Whatever the Supreme Court might have suggested in dicta about state power to exclude, *id.* at 132, it subsequently limited *Miln*, *see, e.g.*, *Henderson v. Mayor of New York*, 92 U.S. 259, 269 (1875) ("*Miln* … decide[d] that the requirement of a catalogue of passengers … [wa]s a proper exercise of State authority."). Indeed, the Supreme Court has repeatedly struck down state laws that precluded or burdened noncitizens' entry into the United States, *see, e.g.*, *id.* at 270-72; *Chy Lung v. Freeman*, 92 U.S. 275, 280 (1875). Like those laws, SF 2340 is similarly unconstitutional.

Iowa is also wrong (at 22) that SF 2340 is "intra-territorial." In fact, it admits (at 23) that § 2(1) "discriminates" against noncitizens entering Iowa after previously "having been ordered to leave the [United States]," and seeks to expel noncitizens back "to the foreign nation from which the person entered," *id.* § 4(4). This cross-border "movement of persons" constitutes commerce, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 255-56 (1964), and SF 2340's facial discrimination against certain noncitizens violates the Foreign

7

Commerce Clause, *see Kraft Gen. Foods, Inc. v. Iowa Dep't of Rev. & Fin.*, 505 U.S. 71, 81 (1992); *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 368-69 (2023) (reaffirming Commerce Clause's nondiscrimination principle). Even if it were nondiscriminatory, SF 2340 undermines the United States' ability to speak with one voice in foreign relations. *See* Mot. at 10, 19-20; *Barclays Bank PLC v. Franchise Tax Bd. of Cal.*, 512 U.S. 298, 311 (1994) (noting "special need for federal uniformity" in "unique context of foreign commerce"); Jacobstein Decl. ¶¶ 11-12 (describing Mexico's objections).

Finally, Iowa is incorrect (at 23) that Congress's extensive regulation of reentry and removal obviates the limits imposed by the Foreign Commerce Clause. Iowa points to no "unmistakably clear" congressional approval for state criminalization of illegal reentry, *Maine v. Taylor*, 477 U.S. 131, 139-40 (1986), and ignores the case finding that Texas's analogous SB 4 also violates the Foreign Commerce Clause. *United States v. Texas*, --- F. Supp. 3d ---, 2024 WL 861526, at *23-24 (W.D. Tex. Feb. 29, 2024) (*Texas SB 4*).

### D. The United States may sue in equity to enjoin SF2340 and has standing.

Contrary to Iowa's contention (at 9-11), the United States has a right to sue in equity to enjoin SF 2340. Congress has empowered federal courts to exercise equity jurisdiction and to grant such relief as "was traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19 (1999); *see* 28 U.S.C. §§ 1331, 1651. The Supreme Court has long recognized the United States' authority to apply to its own courts to protect its sovereign interests. *See, e.g.*, *In re Debs*, 158 U.S. at 582; *United States v. San Jacinto Tin Co.*, 125 U.S. 273, 279 (1888); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315 (1888); *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Unless displaced by Congress, that nonstatutory equitable right "to sue to enjoin unconstitutional actions" by state officers exists independent of the Supremacy Clause. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327, 329 (2015). Congress has not done so, and Iowa has not shown otherwise.

Iowa argues (at 10) that *In re Debs* applies only if the federal government asserts a property interest or seeks to abate a public nuisance. But *In re Debs* noted that "the mere fact

that the government has no pecuniary interest is not sufficient to exclude it from the courts." 158 U.S. at 586. Indeed, the United States has sued in equity to protect other sovereign interests. *See, e.g.*, *Sanitary Dist. of Chi. v. United States*, 266 U.S. 405, 425-26 (1925) (enforce treaty obligations); *Heckman v. United States*, 224 U.S. 413, 438-39 (1912) (protect Indian tribes). This case is no different from *Arizona* or numerous other cases in which the United States sued to enjoin preempted state immigration laws. *See, e.g.*, *Texas SB 4*, 97 F.4th at 278 ("We see no basis in the precedent … for concluding that the United States lacks a cognizable path for seeking to enjoin an allegedly preempted state law."). And more generally, *Ex parte Young*, 209 U.S. 123, 167 (1908), permits suits against state officials where a plaintiff alleges an imminent or "ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. For Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). The United States may invoke the doctrine because "the validity of an *Ex parte Young* action [does not] turn on the identity of the plaintiff." *Id.* at 256.

Iowa is incorrect (at 11) that the United States lacks standing to challenge SF 2340 § 4. The requested injunction would bar defendants and their agents from enforcing the law. *See* Fed. R. Civ. P. 65(d)(2)(B). The Court therefore can redress the United States' injuries.

### E. The State War Clause does not justify SF 2340.

Iowa argues summarily (at 24) that the State War Clause authorizes Iowa to use SF 2340 to combat the "invasion" of "cartels exploiting the illegal immigration crisis." But as the Western District of Texas recently explained at length, that argument is flawed in multiple respects. *See Texas SB 4*, 2024 WL 861526 at *24-38. The State War Clause forbids States to "engage in War" except when "actually invaded, or in such imminent Danger as will not admit delay," U.S. Const. art. I, § 10, cl. 3. Here, Iowa does not purport to be engaging in war; enactment of a criminal law regarding the general reentry of noncitizens is hardly warmaking. Moreover, every court to have considered whether irregular migration constitutes "invasion" has concluded that it does not. *See Texas SB 4*, 2024 WL 861526 at *24-38; *California v. United States*, 104 F.3d 1086, 1090-92 (9th Cir. 1997); *New Jersey v. United States*,

91 F.3d 463, 469-70 (3d Cir. 1996); *Padavan v. United States*, 82 F.3d 23, 28 (2d Cir. 1996). While the State War Clause provides a time-limited emergency authority allowing a State to address circumstances that "will not admit of delay" until the federal government has had a chance to respond, U.S. Const. art. I, § 10, cl. 3, it does not entitle a State to persist in war-related activities indefinitely or disregard a federal determination about whether (and how) to "engage in War" or to pursue other measures in response to particular circumstances. *See Texas SB 4*, 2024 WL 861526 at *35 (recognizing that "[t]he State War Clause … authorizes states to respond to invasion only as an emergency interim measure" but requires them to "cede authority to the federal government to conduct [any] war once [it] has had time to respond"). And no exigency warranting state action exists when the asserted "invasion" involves matters addressed by Congress and the Executive, *see* Jacobstein Decl. ¶¶ 15-24.

## II. The Equitable Factors Support Entering an Injunction.

Iowa makes no effort (and submits no evidence) to rebut the United States' showing of irreparable harm, except to repeat its mistaken belief that SF 2340 is consistent with federal law. Its suggestion that the United States can avoid harm to its sovereign interests by intervening in individual SF 2340 criminal cases is unworkable in practice and would frustrate Congress's comprehensive enforcement framework. Iowa's assertion (at 25) that enjoining SF 2340 would affect the State's anti-trafficking efforts and result in Iowa being burdened by "tens of thousands" of noncitizens also lacks any evidentiary support. And in any event, Iowa can assert no legally cognizable interest in protecting its citizens from purported immigration-related harms. *See* Mot. at 23-24. The equitable factors, in short, support issuance of at least a preliminary injunction. Because the purely legal issues in this motion are dispositive, the Court could instead issue final judgment and enter a permanent injunction.

## CONCLUSION

The Court should grant the motion and enter any other appropriate equitable relief.

DATED: June 5, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

JEAN LIN
Special Litigation Counsel, Federal Programs Branch

/s/ *Christopher A. Eiswerth*
CHRISTOPHER A. EISWERTH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-0568
Email: christopher.a.eiswerth@usdoj.gov

*Counsel for the United States*